| 49 | 137 |
|---|---|
| 148 | 651 |
| 49 | 137 |
| 153 | 17 |
| 153 | 23 |
| 49 | 137 |
| 156 | 258 |
| 49 | 137 |
| 160 | 426 |
| 160 | 436 |

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, *v.* THOMAS BENNETT, Defendant in Error.

A decision of the Supreme Court, reversing a conviction in the Oyer and Terminer and granting a new trial, is a judgment within the meaning of chapter 82, Laws of 1852, and, as far as that court is concerned, is final. A writ of error, therefore, lies to review such judgment.

Upon a trial in the Court of Oyer and Terminer the court has no power to grant a motion to discharge the prisoner upon the ground that the *corpus delicti* has not been proven. After the trial has commenced the verdict of the jury must be pronounced; but this may be done under the advice and direction of the court. All questions of law arising upon a criminal trial are to be determined by the court; and it is the duty of the jury to regard and abide by such determination. Where the case, therefore, presents a question of law only, the court may, and it is its duty to instruct the jury to acquit the prisoner, or direct an acquittal, and enforce the direction; and a refusal to give such instruction or direction in a proper case is error. If the prosecution leave some element necessary to constitute the crime entirely unproved, it is a clear case for the interposition of the court.

The same strictness in regard to exceptions will not be enforced in criminal as in civil cases; but the court will look at the substance, with the view to promote justice. A motion in form for the absolute discharge of a prisoner may be regarded, as in substance, a request to direct an acquittal, or that the court instruct the jury, as matter of law, that the prisoner could not be convicted.

Of the crime of murder or manslaughter, the *corpus delicti* has two components, viz., death as the result, and the criminal agency of another as the cause. There must be direct proof of one or the other. Where one is

proven by direct evidence, the other may be by circumstances. In determining a question of fact upon a criminal trial from circumstantial evidence, the facts proved must not only all be consistent with, and point to, the guilt of the prisoner, but must be inconsistent with his innocence. A motive for the commission of the crime cannot be imagined ; but the facts from which such motive may be inferred must be proven. A suggestion, therefore, in a charge to the jury, of a motive, not warranted by the evidence, which may have influenced their minds to the prejudice of the prisoner, is error. (GROVER and PECKHAM, JJ., dissenting.)

(Argued March 27, 1872; decided April 1, 1872.)

ERROR to the General Term of the Supreme Court in the third judicial department, to review judgment of that court, reversing a judgment of the Court of Oyer and Terminer in and for the county of Ulster, entered upon a conviction of defendant in error of the crime of manslaughter in the second degree, and granting a new trial.

The facts sufficiently appear in the opinion. .

*F. L. Westbrook* for the plaintiffs in error. The death of the wife having been proved by direct and positive evidence, the other questions involved may be proven by circumstantial evidence. (Burrill on Cir. Evidence, 682, 720, 722; Wills on Cir. Evidence, 168; Best on Presumptions, 205; *Ruloff* v. *People*, 18 N. Y., 180–199; 2 Beck's Med. Jurisprudence, 190; Taylor's Med. Jurisprudence, 187; *People* v. *Green*, 1 Park., 22, 25; *People* v. *Williams*, 3 id., 107.) All circumstances are competent, both tending to show the act complained of as a crime and to fix it upon the prisoner. *Sheperd* v. *People*, 19 N. Y., 535; *Stevens* v. *People*, 19 id., 549; *People* v. *Hendrickson*, 8 How., 412; *Jacobson's Case*, 2 City Hall Rec., 131; Wharton's Law of Homicide, 316, 318; 2 Beck's Med. Jurisprudence, 281, 285; 3 Wheeler's Cr. Cases, 65; Burrill Cir. Evidence, 583, 720, 252, 283.) Among the most common evidence is that which shows a motive on the part of the accused. (*Kennedy* v. *People*, 39 N. Y., 254; *People* v. *Gonzales*, 35 id., 62, 63; *McCann* v. *People*, 3 Park, 312; *People* y. *Hendrickson*, 8 How., 412; *Jeffords* v. *People*, 5 Park, 559.) It is the exclusive province

of the jury to pass upon the evidence; and in this State the Oyer and Terminer can in no case take away or withhold this right. The case cannot be taken from the jury, after trial commenced, upon a question of fact. (*Commonwealth* v. *Porter*, 10 Metcalf, 285; *The People* v. *Judges of Dutchess*, 2 Barb., 282; *Quimbo Appo* v. *People*, 20 N. Y., 531; *Rex* v. *Mawbey*, 6 Term R., 638; *Willis* v. *People*, 32 N. Y., 721; *Thompson* v. *People*, 41 id., 1; *People* v. *Harris*, Edmonds' Select Cases, 453, 461; 2 Bar., 292; 2 Hale's Pleas of the Crown, 313.) Wounds of the genital organs are generally due to the violence of others. (Wharton & Stille Med. Jurisprudence, 866; Guy's Forensic Medicine, 477; Taylor's Med. Jurisprudence, 6th Am. ed., 299.)

*D. M. De Witt* for the defendant in error. No person can be legally convicted of felonious homicide where, by the evidence, the existence of criminal agency causing death is left problematical. (Wills' Cir. Ev., 200, 206, 207, 230; Whar. Am. Crim. Law, § 746; Burrill on Cir. Ev., 678, 681, 682, 683, 119, 120; *Ruloff* v. *People*, 18 N. Y., 179; 2 Beck's Med. Jurisprudence, 7–11, 16, 28, 107–117; Best on Pres., 201; 3 Greenleaf on Ev., §§ 131–135; see, also, 1 Russell on Crimes, 473; 3 Greenleaf Ev., §§ 30, 131; *Hindmarsh's Case*, 2 Leach's Cr. Law, 569; Wharton & Stille Med. Jurisprudence, §§ 1027, 1028, 810; *Rex* v. *Yerd*, 6 Carr. & P., 176; 2 Russell on Crimes, 122, 123; *Plunkett's Case*, 3 City Hall Rec., 137; *Tyner* v. *The State*, 5 Humphrey's, 383; *Carey* v. *State*, 7 id., 499.) The establishment of the *corpus delicti* is an indispensable preliminary to the introduction of evidence to identify the prisoner as the criminal agent. (Wills' Cir. Ev., 200, 234, 235; Roscoe Crim. Ev., 636; Best on Pres., 201; Burrill on Cir. Ev., 119, 120.)

CHURCH, Ch. J. The prisoner was indicted for the murder of his wife and tried at the Ulster Oyer and Terminer in April, 1871, and convicted of manslaughter in the second degree. Upon writ of error to the Supreme Court the judg-

ment was reversed, and the people brought error to this court.

The objection that a writ of error will not lie from the judgment of the Supreme Court reversing a conviction in the Oyer and Terminer and granting a new trial, is not tenable. The act of 1852 expressly authorizes a review by this court in such cases. The decision in the Supreme Court is a judgment within the meaning of the act, and besides it is final, so far as that court is concerned. (Laws of 1852, page 76.)

The deceased came to her death on the 16th of June, 1870, by the loss of blood occasioned by a contused wound in the genital organs, inflicted by an instrument which ruptured some of the veins and one or more arteries located in that portion of the body.

At the close of the evidence on the part of the prosecution, the counsel for the prisoner moved the court to discharge the prisoner on the ground that this was not a case for the jury, the *corpus delicti* not having been proved, the criminal agency of another than the deceased not having been proved to have been the cause of death. A similar motion was made at the close of the whole evidence, both of which were denied and the case was submitted to the jury. The Supreme Court held this to be an error and reversed the judgment.

In the first place, it is proper to remark that the Court of Oyer and Terminer had no power to grant the precise motion made to take the case from the jury and discharge the prisoner. The verdict of the jury must be pronounced after the trial has been commenced, but this may be done under the advice or direction of the court. The same strictness, in the form of exception, will not be enforced in criminal as in civil cases, but the court will look at the substance with a view to promote justice.

Although the motion was, in form, for an absolute discharge of the prisoner, it may be regarded, in substance, as a request to direct an acquittal; or that the court instruct the jury, as a matter of law, that the prisoner could not be convicted, and the court evidently so understood it by deciding to submit the case upon the merits to the jury. There is no

such thing as a nonsuit in a criminal case in the Oyer and
Terminer; and it has been a disputed question whether the
Court has power to direct an acquittal or whether its power
is advisory merely, which might or might not be acquiesced
in by the prosecuting attorney or by the jury. (1 Edmonds'
Select Cases, 453.) Practically, the result is the same. It is
very rare that the prosecuting officer will not accede to the
opinion of the court, and still more rare to convict against the
advice of the court that it was improper. The court has no
power to *nolle prosequi* an indictment, except on motion of
the district attorney; and the necessity of procuring the con-
sent of court is of comparatively recent statutory regulation.
(2 R. S., 728.) This restriction applies to district attorneys
only; the attorney-general still having power to enter a *nolle
prosequi* upon any indictment without the consent of the
courts. Courts of Oyer and Terminer have no power to
grant a new trial upon the merits (*Quimbo Appo* v. *The
People*, 20 N. Y., 531), and hence it is urged that they cannot
determine the merits upon the trial, and that the appellate
court has, therefore, no power to reverse a judgment upon the
merits. The apparent incongruity suggested in these cases
may, I think, be solved by observing the proper distinctions
as to the nature of the questions presented for decision. Con-
trary to an opinion formerly prevailing, it has been settled
that the juries are not judges of the law as well as the facts in
criminal cases, but that they must take the law from the court.
All questions of law arising during the trial are to be deter-
mined by the court, and it is the duty of the jury to regard
and abide by such determination.

And although where a general verdict is rendered it may
be impracticable to analyze it so as to ascertain the grounds
upon which it was rendered, for the purpose of a legal remedy,
yet this does not detract from the rule or the binding force of
the decisions of the court upon questions of law. The jury
may find the facts specially and leave the court to apply the
law.

I can see no reason, therefore, why the court may not, in a

case presenting a question of law only, instruct the jury to acquit the prisoner, or to direct an acquittal, and enforce the direction, nor why it is not the duty of the court to do so. This results from the rule that the jury must take the law as adjudged by the court, and I think it is a necessary result. It follows that a refusal to give such instruction or direction in a proper case is error.

In *The Ruloff Case* (18 N. Y., 179), this court reversed the judgment and conviction against the prisoner for the error of the court in not directing an acquittal, although the question of power was not raised. The same practice has prevailed to some extent in other States and in England. (*Smith's Case*, Leigh & Cave C. C., 607; *Reg.* v. *Bird*, 5 Cox Cr. Cas., p. 1; Bishop's Crim. Pro., § 977.) Regarding the motion in this case as equivalent to a request to direct an acquittal, the question is whether it was a legal error to refuse it. The distinction referred to, and which I regard as important to be observed, is between questions of law and questions of fact. The former the court may, while the latter they may not, decide. If the prosecution leaves some element necessary to constitute the crime entirely unproved, it is a clear case for the interposition of the court. As in the case of treason, when two witnesses are necessary to an overt act and there is but one, or in perjury when two witnesses are required and but one is produced, and in any case when assuming all the facts proved to be true they fall short of constituting the crime, the prisoner is entitled to have the instruction of the court in his favor. But in a case where competent evidence has been given tending to prove every element constituting the crime, and the force and effect which ought to be given to it depends upon the credibility of witnesses and upon inferences to be drawn, as to which persons may differ, it is not the province of the court to take the case from the consideration of the jury, although it may be of the opinion that it is not sufficient to convict.

In cases of weak and unsatisfactory evidence the court can always impress a jury with the benign principles of the com-

mon law established for the protection of the innocent: that
the prosecution are bound to establish a clear case; that the
prisoner is entitled to the benefit of all reasonable doubts;
and that it is better that many guilty prisoners should escape
than that one innocent person should be punished; and there
may be cases so weak upon the facts as to justify the advice
of the court that it is unsafe in the particular case to convict.
This is the extent to which a court can be justified in going
in a case where any view of the facts may be taken warrant-
ing a conviction.

Justice is better administered, both in civil and criminal
cases, by confining the respective duties of court and jury to
each tribunal, and permitting no encroachment by either.

It is, however, strenuously insisted by the learned counsel
for the prisoner that this is a case of defective proof, that
there was a failure to prove the complete *corpus delicti*, and
that it falls within the principle of the *Ruloff Case (supra)*,
and this was sustained by the Supreme Court. I feel con-
strained to differ from this view of the case. The *corpus
delicti* has two components, viz.: Death as the result, and
the criminal agency of another as the means, and all that the
court decided in the *Ruloff Case* was, that there must be direct
proof of one or the other. The court adopted the rule of
Lord HALE, who said: "I would never convict any person
of murder or manslaugher, unless the fact was proved to be
done, or, at least, the body found dead." The court review
numerous authorities to sustain the decision, which is, unques-
tionably, a just and sound rule. The point of the decision is
that, as to one or the other of the component parts of the
*corpus delicti*, there must be direct evidence; that both cannot
be established by mere circumstantial evidence; but the court
affirms the rule that when one is proved by direct evidence,
the other may be by circumstances. In that case the basis of
the *corpus delicti*, that the person alleged to be murdered was
not found dead was wanting. The death, as well as the crimi-
nal agency, was attempted to be proved by circumstances.
Here the body was found dead and fully identified, and it

was undisputed that death was produced by the wound inflicted in the vagina; and the remaining material question was, whether the prisoner feloniously inflicted it. It was competent to prove that fact by circumstantial evidence.

Burrill, in his work on Circumstantial Evidence, page 682, lays down the correct rule. He says: "A dead body or its remains having been discovered and identified as that of the person charged to have been slain, and the basis of the *corpus delicti* being thus fully established, the next step in the process, and the one which seems to complete the proof of that indispensable preliminary fact, is to show that the death has been occasioned by the criminal act of *another person*. This may always be done by means of circumstantial evidence, including that of the presumptive kind; and for this purpose a much wider range of inquiry is allowed than in regard to the fundamental fact of death. And all the circumstances of the case, including facts of conduct on the part of the accused, may be taken into consideration."

In this case, everything which tended to prove that the wound was inflicted by the criminal agency of another, tended also to fix it upon the prisoner; and everything which bore upon his guilt, of course strengthened the fact of criminal agency. Unless the wound was inflicted by the deceased herself or by an accident, it must have been done by the prisoner. There is no possible theory that any one else could have done it. If any view of the facts which the jury was warranted in taking would justify a conviction, then it was a question of fact and not of law, and the court properly declined to take it from the jury; and it is only upon questions of law that the Supreme Court or this court can reverse the judgment.

In determining a question of fact from circumstantial evidence, there are two general rules to be observed: 1. The hypothesis of delinquency or guilt should flow naturally from the facts proved, and be consistent with them all. 2. The evidence must be such as to exclude, to a moral certainty, every hypothesis but that of his guilt of the offence imputed to him · or, in other words, the facts proved must all be con-

sistent with and point to his guilt not only, but they must be inconsistent with his innocence.

The counsel insists that the evidence fails under either rule, and especially under the second; and that it is not proved that the wound might not have been inflicted by the deceased herself, or by accident. The principal affirmative evidence against the prisoner was that he had the opportunity to do it. About half an hour before the deceased died she was seen apparently in her usual health. During that time she and the prisoner were in the house alone with their two infant children when this wound was inflicted, and she bled to death. The deceased had been in the habit of getting drunk; and when in that state would become wild and crazy, and sometimes wander around the neighborhood and remain out all night. When she was intoxicated the prisoner was in the habit of chastising her by whipping her, and they had lived for some time on bad terms.

The prisoner complained of his wife to the neighbors for drinking and made some threats against her, and charged that she sold pork and other property for liquor, and she sometimes complained of misusage on his part. The occurrence took place about dusk on the day in question, and the first that was known of it was that the prisoner informed a half sister of his wife, who lived in the adjoining house; that his wife was fainting or dying and wanted her.

The witness says she asked him if it was a kick he gave her. He said, "no, Catharine, I only gave her three or four slaps." The witness immediately went over and found the deceased lying on the floor in one of the three small rooms of the lower part of the house, without clothing except a chemise, unable to speak from loss of blood, and she died in a few minutes afterward. The *post-mortem* examination revealed a wound in the vagina, rupturing veins and arteries, from which she bled to death. An article was found in the room, which the children had used as a plaything, being a piece of an old lamp with a metal stem about four inches long and a

quarter of an inch thick, with blood upon the end of it, and two hairs resembling those from the private parts.

There was evidence tending to show that this instrument might have produced the wound. One of the physicians testified that he did not think the deceased could have inflicted the wound herself. The account which the prisoner gave on the trial was that he and his wife had some words about his paying passage money to bring his brother from Ireland, and he slapped her twice on her cheek while she was standing up; that she then went into the back room, and he soon followed her to see if she had not gone out the window, and found her standing up with her clothes on; that he returned in a short time and found her sitting up under the window with her back to it and her feet to the door; that he saw blood on the floor, and she was gathering her clothes around her feet; "I asked her what was the matter, and she said; 'let me be; I had a miscarriage; I am all right now;'" that he again left her and went out into the other room, and remained until he heard the child cry, when he went in and found her on the floor just alive, and without clothing except her chemise, and then he gave the alarm, and he denied all knowledge of the injury. Her dress was never found. There was some evidence, but rather slight, that he made statements on the night of the occurrence contradictory to this statement in two respects; first, that he said she had a miscarriage instead of saying that she said she had; and second, that he denied having struck her. But substantially he made the same statement throughout. There was evidence that the deceased was intoxicated at the time, and that the prisoner had also been drinking some that day.

This extraordinary wound could only have been inflicted in one of three ways: by accident, by the deceased, or by the prisoner; and it is claimed that the evidence was not sufficient to warrant the jury in excluding the probability of either of the first two. 1st. As to its being an accident, the jury might have fairly inferred that it must have been done with her clothes on, and that it was impossible for such an

instrument to have penetrated her clothing and inflicted such a wound, and this would be confirmed by her making no outcry and no complaint. The facts would warrant this inference. Whether done by the deceased would depend upon what reliance should be placed upon the evidence and the inferences to be drawn from it. It might be inferred that it was improbable or impossible even. One physician testified that he didn't think she could have done it. She was not pregnant, and there is no evidence that she believed she was, and it was legitimate to believe that she did not do it to produce a miscarriage, and the jury might have inferred that she would not have done it to commit suicide, because, first, she could not, and second, she would not be likely to know that death could be produced in that manner ; and in addition to this, it was the duty of the jury to consider the inculpatory circumstances against the prisoner, the want of affection, the ill feeling, the threats, the quarrel and violence at the time, his conduct as stated by himself in going into the room and finding her bleeding profusely, and waiting until she was incapable of speaking before offering aid or giving the alarm, and from all these and other circumstances the jury might have inferred that the prisoner must have inflicted the wound. All we mean to say is, that it was a question of fact for the jury, and not of law for the court; and that the case was not so defective as to require the court to take it from the jury.

Some of the members of the court are of opinion that the evidence of some of the facts is too unsatisfactory and the facts themselves too inconclusive to exclude any hypothesis consistent with innocence ; others think that the jury were justified from the evidence in finding that the prisoner inflicted the wound. This is only referred to as illustrative of the nature of the question involved, and to show that it is one of fact. The jury is the constituted and most appropriate tribunal to decide such questions, and it is neither lawful nor desirable to restrict their functions. The

facts were properly and fairly submitted to the jury. There
is an exception, however, to one portion of the charge, which
deserves attention. The court submitted the propriety of a
conviction of manslaughter in the second degree, upon the
theory that the prisoner might not have been actuated by a
premeditated design to produce death, and yet in the excite-
ment of a quarrel with the deceased, in the sudden heat of
passion, have inserted the instrument in her private parts for
the purpose of maiming or dishonoring her on account of sus-
picions in regard to her chastity, or because he was inflamed
with passion at the time, and thus have produced her death
in a cruel and unusual manner, and this was excepted to.
There was evidence sufficient to find heat of passion, and the
act committed, if done by the prisoner, would be sufficiently
cruel and unusual to fall within the definition of the statute,
and the jury could find the absence of a premeditated design
to produce death; but the motive suggested was entirely with-
out foundation in the evidence. There is not the slightest
evidence tending to show that the deceased was unchaste or
that the prisoner entertained any suspicion of a want of chas-
tity. Considerable effort seems to have been made to prove
everything that he said against her, and not a word appears
upon that subject. It does appear that on some occasions she
was wandering about in the night, but on these occasions she
seems to have been temporarily insane from intoxication, and
there is no evidence of any act of lewdness in fact, or that the
prisoner charged or suspected any such thing, and the ques-
tion is whether this suggestion of a motive not warranted by
any evidence was error. Motive is an inducement, or that
which leads or tempts the mind to indulge the criminal act.
It is resorted to as a means of arriving at an ultimate fact,
not for the purpose of explaining the reason of a criminal act
which has been clearly proved, but from the important aid it
may render in completing the proof of the commission of the
act when it might otherwise remain in doubt. With motives,
in any speculative sense, neither the law nor the tribunal
which administers it has any concern. (Bur. on Cir. Evi.,

296.)   It is in cases of proof by circumstantial evidence that the motive often becomes not only material, but controlling, and in such cases the facts from which it may be inferred must be proved.   It cannot be imagined any more than any other circumstance in the case.   The jury in this case declined to find the accused guilty of murder, because they doubtless believed the evidence insufficient to establish the fact that the act was committed by him.   The same degree of certainty as to that fact was requisite to convict of manslaughter, but with the suggested motive in the case it may have been sufficient to turn the scale against him.   If any facts had existed warranting the inference of such a motive, it would have been legitimately persuasive to convince the mind of the guilt of the accused; but without any foundation in the evidence, it was improper to consider it.   From the charge of the court the jury had a right to suppose that they could properly regard the existence of such a motive as a circumstance; and as we cannot determine what influence it had in their minds in removing the apparent improbabilities of such a crime or in explaining and accounting for such an extraordinary outrage, and as we cannot say that it had no weight and did not prejudice the prisoner, we feel constrained to hold the exception to this point of the charge well taken.   For this error the judgment of the Supreme Court must be affirmed.

All concur except GROVER and PECKHAM, JJ., dissenting.

Judgment affirmed.