### PEOPLE v. RAINIER et al.

(Supreme Court, Appellate Division, Second Department. June 5, 1908.)

1. BURGLARY—PROSECUTION—EVIDENCE—PRESENCE OF ACCUSED—INCRIMINATING CIRCUMSTANCES.

In a prosecution for burglary, there was positive evidence by the state's witnesses that noises as of men running were heard on the roof of the burglarized house and over several adjoining roofs to the roof of an apartment house, the door leading to which was open, and that some 10 minutes thereafter defendant and another came out of the door of the apartment house and were arrested; but the state failed to show that defendant did not have lawful business therein, and thereafter defendant's companion testified for the defense that they had been at another place and were only passing the apartment house when arrested. *Held*, that the jury could construe the testimony ·by defendant's companion as supplying the defect in the state's testimony, and as tantamount to an admission that defendant had no lawful business in the apartment house.

2. SAME—SUFFICIENCY OF EVIDENCE.

In a prosecution for burglary, evidence showing a breaking and entering of the house, that several men ran across the roof of that and adjoining buildings to the roof of an apartment house, and that the door leading to the roof of the apartment house was open, and tending to show that defendant and another emerged upon the street from the apartment house within 20 minutes thereafter, and that they had no lawful business therein, was sufficient to sustain a finding by the jury that defendant was guilty.

[Ed. Note.—For cases in point, see· Cent. Dig. vol. 8, Burglary, §§ 94–109.]

Appeal from Kings County Court.

George Rainier, impleaded with Frank Schack, was convicted of burglary, and he appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

L. B. Treadwell (R. W. Darling, on the brief), for appellant.

Peter P. Smith (John F. Clarke, Dist. Atty., on the brief), for the People.

HOOKER, J. The defendant was convicted of the crime of burglary in the first degree, being assisted by a confederate actually present. See Pen. Code, § 496, subd. 3. Of the facts of the breaking, the entering, that it was in the nighttime, that a human being was in the building, and that, if the defendant was one of the persons who performed the crime, he was assisted by another actually present, there is in the record abundant evidence. The argument is whether or not there is sufficient identification of the defendant as one of the persons who committed the crime. The occupant of the dwelling, who was in the building at the time, testifies that after the alarm he heard a noise on his roof as if a half dozen men were running across. The night watchman said that he heard a noise as if two men or boys were running across the roof of the building, and he followed the noise across the roofs of several buildings up to the roof of an apartment house; that he then took his station in a secluded spot about 75 or 100 feet away from the entrance of the apartment house; that between 10 and 20 minutes thereafter the defendant and a companion came out of the door of the apartment house and walked rapidly away; and that the witness, following them, placed them under arrest. The two men were taken to the station house and searched, but nothing of an incriminating nature was found upon them. They gave addresses which were not that of the apartment house. Within half an hour later the occupant of the dwelling and two or three officers went upon the roof of the house where the burglary had been committed, and there found some articles which might be used by burglars. They traversed the roofs of the intervening houses until they reached that of the apartment house. Trap-doors through the roofs were open on the apartment house and upon one of the houses intervening.

It did not appear in the people's case that the two men arrested, one of whom was the defendant, had no business in the apartment house at that time, which was between 12 and 1 o'clock at night. In spite of the fact that the night watchman swore with great positiveness that he saw the defendant and his companion emerge from the entrance to the apartment house, the identification was by no means satisfactory; for it was quite as possible that the defendant and his companion were emerging from the apartment house after having been lawfully there, as that they were the individuals that had been running on the tops of the adjoining houses. It will be seen that the defect in the people's case was that there was no proof that the defendant and his companion were not in the apartment house on lawful business. However, the defendant's companion was sworn as a witness for the defense, and has, indirectly at least, supplied this deficiency in the proof. He testified that he and this defendant were in Coney Island during the evening in the company of two young ladies, and that at the time of their arrest they were on their way to take a street car after having just escorted the young ladies to their homes, and that they were not inside the apartment house, but were arrested as they passed by it. In view of the testimony not explanatory of their presence there, but denying it, for all purposes in this case it may be taken as a fact that these men had no lawful business at that time of night in the apartment house. The jury have evidently done what they were justified in doing, name-

ly, have considered the explanation of the defendant's witness tantamount to an admission that the men had no lawful business in the apartment house, and have also believed the testimony of the night watchman that the defendant and his companion actually emerged therefrom. The young ladies with whom it was said the men spent the evening were not sworn as witnesses. The evidence of the breaking and entering, the running of men across the roofs of the intervening houses to the roof of the apartment house, the open door leading to the roof of the apartment house, and the emerging of the defendant and his companion therefrom upon the street within between 10 and 20 minutes thereafter, and the fact that they had no lawful business therein, were, in my opinion, sufficient to warrant the jury in finding the defendant guilty of the perpetration of the act charged.

We conclude that the conviction must be affirmed. All concur.