THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY SOWMA, Appellant.

Fourth Department, November 5, 1937.

*De Silver Drew*, for the appellant.

*Raymond A. Knowles, District Attorney*, for the respondent.

EDGCOMB, J. The peculiar chain of circumstances and coincidences which led to the arrest, indictment and ultimate conviction of Henry Sowma, the appellant, and his brother Edward, of an attempt to commit the crime of arson in the first degree, began with the finding of a lighted candle in a gas-filled cellar of the defendants around midnight on April 29, 1936.

Without doubt someone sought to burn the building, but the attempt proved a failure because the candle and the leak were discovered before the anticipated explosion took place.

The finger of suspicion pointed to the Sowma brothers. They were subsequently indicted, tried and found guilty. The court set aside the conviction of Edward, and granted him a new trial, upon the ground that the evidence was insufficient to warrant the submission of the case to the jury as to him. A similar application by Henry Sowma was denied, and his appeal is now before us.

The fact that a cap had been removed from a gas pipe in the cellar under a store in which the defendants were interested, and that gas was escaping at the rate of one hundred and seventy-five cubic feet per hour, and that a lighted candle some three and one-half inches in length was found burning at the other end of the room, some twenty-five or thirty feet from the leak, is not disputed. The problem is to find who was responsible for this condition. No one saw the cap taken off the pipe, nor the lighted candle placed in the cellar. No human being was seen to enter or leave the cellar during the evening of April twenty-ninth. There is not a shadow of direct evidence connecting either of these defendants, or any one else for that matter, with the commission of this crime. A resort is, therefore, had to circumstantial evidence in an attempt to establish the ultimate fact of guilt. It has long been the rule that any material fact in a criminal prosecution may be established by circumstantial as well as by direct evidence. Attending events often weave a stronger chain, and produce a higher degree of proof than can be derived from direct evidence.

The incidents and occurrences from which the jury has found the appellant guilty of the crime charged may briefly be stated as follows:

On February 15, 1936, Edward Sowma rented a store in the building in question; he put in a stock of groceries, and engaged his brother Henry to manage the business, under an arrangement whereby Henry was to do all the work, and get his living in return, the gas for his car, and seventy-five per cent of the profits, if there were any. The stock and fixtures were insured for $4,000. There is no evidence of over-insurance, unless it can be inferred from an alleged admission of Henry's that on April twenty-ninth he thought the stock was worth around $1,800. Nothing was said about fixtures. While the store was not proving a huge financial success, it had not been in existence long enough to fairly judge what would be the outcome.

On the night in question Henry's wife kept the store open until around eleven o'clock. Earlier in the evening Henry went to a billiard parlor nearby to play pool. He says that he left the parlor at approximately eleven-twenty-five, and drove back to his store, stopping on the opposite side of the street, and that his wife came down from their apartment over the store, with her four-year-old child and her mother, and that they all got in the car and drove to a roadside stand, some seven miles distant, where they had some refreshments and remained for an hour or more. After driving about the city for a time they returned home, reaching there around three o'clock in the morning. A policeman was waiting for their return and he asked Henry for the key to the store. Henry got it from his wife, who had it in her possession, and he and the policeman entered the store where they found everything in order. Both Henry and his wife were taken to the police station where they made statements. Henry's did not differ materially from the evidence which he gave on the trial, except that the latter was naturally much more detailed than his statement to the police.

When Henry was told by the policeman what had occurred during his absence, he apparently acquiesced in the common belief that someone had tried to burn the building, but he denied any participation in the attempt. He suggested that the guilty party might have entered the store through a rear window, and thus gained access to the cellar. The window was examined; the lock was found to have been removed, but an undisturbed layer of dust on the sill, and a plant on the radiator in front of the window, and cartons on the floor nearby, indicated that appellant's suggestion was ill-founded. There were no deceptive explanations by appellant, or endeavors to cast suspicion upon others without just cause,

which can be seized upon as a circumstance indicating a guilty conscience on his part.

While there is some evidence from which the appellant seeks to infer that the cap might have become loosened by a continual jarring of the pipes, the fact that it could not be found leads to the inevitable conclusion that it had been removed by someone and taken away, with the deliberate purpose of permitting the gas to escape into the cellar. Whoever did this undoubtedly left the lighted candle in the room. Entrance to the cellar was apparently had through the Sowma store, as all the other doors to the portion occupied by the defendant were locked and bolted.

The People urge that when Henry drove up in front of his store about half-past eleven, and while he was waiting for his wife and mother-in-law to join him for their contemplated ride, he had plenty of time to enter the building, go down cellar, take the cap from the gas pipe, and place the lighted candle. If Henry's story that he did not leave his car is true, the contention of the People has no force. But we are not obliged to believe Henry. The testimony of his wife that she and her mother were waiting for his return, and that he did not leave the car, is weakened somewhat by her statement to the police that when Henry drove up she went across the street, and put some groceries in the car, and gave him the key to the store, and then went upstairs to get her mother and baby. However, no one saw Henry leave his car. That he might have done so is only a surmise.

Undoubtedly the appellant had an opportunity to commit this crime. He was in front of the building by his own admission at about the time this burning candle must have been placed in the cellar, and just before the presence of gas was discovered in the building. But opportunity to commit a crime, standing alone, is insufficient to sustain a conviction.

Furthermore, appellant's wife had the same access to the cellar, and the same opportunity to set fire to the building that her husband had. She was in the store until shortly after eleven o'clock, and after she had locked the store she still retained the key, and was in the building until she drove away with her husband. The circumstances proven are just as consistent with her guilt as with that of her husband. Why the husband was selected as the culprit rather than the wife is not explained.

The fact that Henry and his family left the building soon after the lighted candle was placed in the gas-filled cellar, and remained away until three o'clock in the morning, is somewhat suspicious. The explanation given for this midnight ride does not fully satisfy one's appetite for facts. In most walks of life devoted parents do

not take a four-year-old child out for a ride until three o'clock in the morning, and feed him " hot dogs " and coca cola. Yet we cannot say that defendant's story is entirely fantastic. He is a foreigner, and some foreigners have different ideas about bringing up children than well-informed Americans have. The ride in question was prolonged, so we are told, by reason of Mrs. Sowma's headache. Most people, suffering with such an ailment, prefer to go home and go to bed rather than ride about the town during all hours of the night. However, people differ in their tastes, and it is quite possible that the excuse given by the defendant for what seems, at first blush, an extraordinary thing to do, is a perfectly honest and legitimate one. These people say that the only time they have for recreation is after they close the store at night, and that they are accustomed to get rest and relaxation in that manner. While one is apt to be incredulous, and doubt the adequacy of the reason given for this prolonged jaunt, suspicion is many times more apt to be wrong than right; often it is unjust rather than just. The law will not permit men to be convicted of a crime on mere suspicion. If there was any evidence to connect appellant with the commission of this crime, other than a mere opportunity to have committed it, if he had been seen to leave his car, or enter the building, or if the possession of the candle, or a similar one, had been traced to him, then the peculiar circumstances surrounding this midnight excursion would have more force, and might constitute the last straw in the proof of appellant's guilt.

The record before us fails to satisfy the tests applicable to circumstantial evidence as proof of guilt. The events proven do not lead irresistibly to the guilt of the appellant; they do not exclude to a moral certainty every hypothesis other than that of his guilt; they are not inconsistent with his innocence. Under such circumstances a conviction cannot be had on circumstantial evidence. (*People* v. *Lewis*, 275 N. Y. 33, 39; *People* v. *Fitzgerald*, 156 id. 253; *People* v. *Galbo*, 218 id. 283, 293, 294; *People* v. *Razezicz*, 206 id. 249, 269.)

The evidence upon which the conviction is sought to be sustained is of such doubtful probative force that it was peculiarly important for the People to establish a motive on the part of the accused. We find little or no evidence upon that subject. Appellant had no interest in the insurance on the stock and fixtures, and stood to gain nothing if the place was burned. He lived over the store, and had no insurance on his furniture or personal belongings. Under his arrangement with his brother he got his living out of the store, whether there were any profits or not, and if the business was discontinued his living would have been cut off. There is no evidence

of animosity or vindictiveness on the part of the accused toward the owner, or any of the occupants of the building. They were all on friendly terms with him. No reason, worthy of consideration, which would have induced the appellant to burn the building, has been suggested. Motive cannot be imagined any more than any other circumstance in the case. It can only be inferred from facts which have been proven. (*People* v. *Bennett*, 49 N. Y. 137, 149; *People* v. *Fitzgerald*, 156 id. 253, 258.)

The absence of motive is an impelling circumstance in exonerating a defendant, where reliance is placed entirely upon circumstantial evidence to establish the crime, as is the case here. (*People* v. *Lewis*, 275 N. Y. 33, 42.)

Appellant had never been previously convicted of a crime. According to the character witnesses who were sworn, his reputation in the community was good.

We think that the evidence fell far short of proving appellant guilty of the crime charged beyond a reasonable doubt.

Whatever one may think of the evidence upon which the appellant was convicted, the judgment cannot be permitted to stand because of the action of the trial court in setting aside the verdict against Edward Sowma, appellant's codefendant, and granting him a new trial, upon the ground that there was not sufficient evidence to submit the case to the jury as to him. In the court's charge, which became the law of the case, the jury was instructed that it was the theory of the People that the defendants were confederates and conspirators in committing the crime, and that, if that was not true, there could be no conviction of either defendant.

A combination or a conspiracy necessarily involves two or more people. One cannot conspire with himself. If, as the court charged, there could be no conviction unless both defendants were confederates and conspirators, and the evidence against one is insufficient to hold the verdict against him, it is difficult to understand how the other can be held. If the evidence is insufficient to convict one, it is inadequate to uphold a verdict against the other. If one is given a new trial, the other should be given the same treatment. (*People* v. *Munroe*, 190 N. Y. 435.)

For the reasons stated, the judgment of conviction should be reversed on the law and facts, and a new trial should be had.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment of conviction reversed on the law and facts and a new trial granted.