THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM CORBISIERO, Appellant.

Argued March 2, 1943, decided April 15, 1943.

*Martin W. Littleton* and *Irving Goldberg* for appellant.

*Thomas Cradock Hughes, Acting District Attorney (Henry J. Walsh* of counsel), for respondent. The appellant's guilt was proved beyond a reasonable doubt.

LOUGHRAN, J. By permission of a Judge of this court, the defendant appeals from an affirmance of a judgment convicting him of the crime of murder in the second degree.

He had kept a pastry shop on Hudson avenue north of the intersection thereof with Prospect street in the borough of Brooklyn. Andrea Romano had lived on the opposite side of Hudson avenue, south of that intersection. In the early evening of September 8, 1941, Romano was found by the police upon the pavement in front of the defendant's shop suffering from a stab wound of the abdomen which resulted the next day in his death.

The principal witnesses for the People were a daughter and two sons of Romano. The daughter said she was at home when, on the occasion in question, she heard an outcry in the street and ran to the adjacent intersection where she saw her father standing with his hands over his stomach. After the court had refused to permit her to report a statement which she said had then and there been made to her by her father, she gave this testimony: " I ran into Willie's [the defendant's] store.  *  *  *  There I saw him waving a knife.  *  *  *  I said, ' What did you stab my father for?  What did he ever do to you? '  *  *  * He then said to me, ' That is all right,' he said, ' I like you, I like you,' he said to me." Romano's two sons were at the shop of the defendant during that same time. Each of them swore he went there alone after separately talking with his father in the street intersection. On their say-so, these two thereafter fetched from their home across the way a pick handle and a hatchet with which they hit the defendant who (according to them) still had a knife in his hand.

George W. Archer, a police officer, examined the defendant's shop during the same evening and therein saw blood marks leading out to a rear yard where he found a knife having fresh stains upon it. Later that night, as Archer testified, he questioned the defendant who in answer said he had gone out of his shop through the rear door after he had been beaten by the Romanos. Dr. Alexander S. Wiener, a serologist, pronounced the stains on the knife found by Officer Archer to have been human blood.

Such was the fabric of the case for the People. No attempt is made to sustain the conviction of the defendant on the basis of this showing of the bare fact that Romano had been fatally wounded by somebody. Initially the position of the District Attorney is that the exception recorded against him at the close of his direct case was waived when the defendant undertook to offer evidence on his own side. We assume this to be so. (See 9 Wigmore on Evidence [3d ed.] § 2496; *Burton* v. *United States,* 142 Fed. 57. But cf. *People* v. *Bennett,* 49 N. Y. 137, 142; *People* v. *Raubvogel,* 217 App. Div. 733; *Reynolds* v. *People,* 41 How. Pr. 179.)

The defendant did not take the stand. His principal witness —Carmine Stanzione—testified in substance as follows: On the occasion in question, the defendant was sitting with others outside his shop when from the opposite side of the street Romano directed at him a gesture of gross insult. At once, the defendant went over to Romano who in the midst of an ensuing argument struck him on the left arm. The defendant then rushed back to his companions. Romano with his two sons followed soon. One of the sons carried a pick handle, the other a hatchet. Romano had a knife in his hand. As the defendant tried to close the entrance door of his shop upon them, he was battered with the pick handle and hatchet. At that juncture, he grasped the knife out of the hand of Romano and stabbed him in the belly.

Dr. Vincent J. Ariola attended the defendant after the occurrence of the events in issue. He testified to his treatment at that time of a wound five inches long which opened the defendant's left arm down to the bone. That wound, Dr. Ariola said, was inflicted by a very sharp instrument and could not have been caused by a hatchet.

The People want us to see in the defendant's proof all that is missing from their own. As we understand it, the point made

by the District Attorney is this: The jury must be supposed to have severed Stanzione's story by casting out his assertion of a seizure of the knife by the defendant from the hostile hand of Romano; the deadly quality of the weapon was bespoken by the character of the fatal wound and indicated an intent to kill; hence the finding of guilt of murder was justifiable in the end. We cannot agree to this assumption of the right to take the defendant's evidence that way in order to contrive a case against him which otherwise was non-existent.

Actually Stanzione's testimony did not eke out the claim of the People. Indeed, the single transaction described by him does not appear to have been on the defendant's part an unlawful one. We believe the endeavor to give reverse effect to this defensive testimony should not be sanctioned as a means whereby any citizen of the State, however innocent, could be exposed to penal discipline.

In thus dealing with the controversy, we do not mean to imply that a judgment of conviction cannot be founded upon incriminating facts disclosed by an accused in making his defense. (See Phipson on Evidence [8th ed.] p. 10. Cf. *People* v. *Rainier*, 127 App. Div. 47.)

The judgments should be reversed and a new trial ordered.

Lehman, Ch. J., Rippey, Lewis, Conway and Desmond, JJ., concur; Finch, J., concurs in result.

Judgments reversed, etc.