OPINION OF THE COURT
Meyer, J.
Even though expert witnesses presented by the People state contradictory opinions, guilt beyond a reasonable doubt may exist if the jury may reasonably so conclude from the other evidence presented and the opinion of one of the experts. Defendant’s guilt beyond a reasonable doubt of the felony murders of firemen who died while fighting a fire set by him was, therefore, established sufficiently to sustain the jury’s verdict. That being so and the other issues raised by defendant being either without merit or beyond our review, the order of the Appellate Division should be affirmed.
I
On August 2, 1978, six firemen died in the performance of their duties as the result of the collapse of the roof of a Waldbaum’s Supermarket in Brooklyn. In March 1979, Harold Harmon, the detective investigating the fire, received information from Julio Cruz that defendant had discussed the Waldbaum’s fire with him in October 1978, when defendant and Cruz were incarcerated at Hikers Island, and had admitted that he did it and had been paid for it. On the basis of that information, Detective Harmon took defendant to the Brooklyn District Attorney’s office for questioning, pursuant to a so-called Damiani order.[1]
*268 Three statements were taken from defendant during that questioning, two on May 7, 1979 and the third on May 9th. In them defendant discussed the Waldbaum’s fire and admitted having gone to the roof of the store before daybreak with two other persons none of whom were ever inside the store, punched holes in the roof, stuffed paper in the holes, poured “lighter fluid”* [2] in the holes and ignited them. He also discussed similarly setting a fire at a Royal Farms Dairy store in Coney Island.
At a suppression hearing defendant raised issues of probable cause, of whether he consented to the May 7th interview (no Damiani order for that date having been produced) and of voluntariness. The hearing Judge found that defendant had consented, that there was probable cause and that the statements were voluntarily given.
The evidence at trial was that the fire was not discovered until about 8:30 a.m., at which time flames were seen on the mezzanine of the store between the men’s room and the compresser room just below the ceiling, about five feet off the floor. Firemen who went to the roof under assignment to vent the roof by cutting holes in it testified to there being holes in the roof but were unable to specify whether they had been made by other firemen.
The supervising fire marshal testified that the fire had been started with an accelerant at four different points within the store, one on a temporary truss in the rear of the men’s room, the other three at points beneath the stairs leading to the mezzanine. He conceded that there was such a thing as a drop fire, but testified that in his opinion the Waldbaum’s fire was not a drop fire, but, rather, had burned upward from the points of origin.
An arson division detective, also called by the People, who had visited the scene for only 10 minutes, testified from examination of the file and the numerous photographs in it. He concluded from photographs of the mezzanine and the cockloft (the area above the ceiling and below the roof) that the fire was a drop fire which burned through the flooring of the cockloft, and from the photographs of the area beneath the mezzanine stairs, that the fire had not originated there. The People also presented Cruz, *269 who testified to defendant’s statement to him, and Detective Harmon and Michael Gary, the Assistant District Attorney who took the May 7th and 9th statements, all three of which were admitted in evidence, as well as firemen who fought the fire and Waldbaum’s employees.
At the close of the People’s case, defendant moved to dismiss on the ground that the People had failed to make a prima facie case. The Trial Judge ruled that despite the inconsistency between the two experts produced by the People reconciliation of their testimony was for the jury. Defendant having rested without introducing evidence, the case went to the jury after a defense summation urging them to disregard the testimony of the arson detective and under instruction from the court that the testimony of experts is subject to the same rules of reliability and credibility as other witnesses. The jury found defendant guilty of six counts of felony murder and one count of second degree arson.
Defendant then moved to set aside the verdict for insufficiency of the evidence to establish his guilt beyond a reasonable doubt and on the ground of newly discovered evidence that Cruz, who was 17 at the time of defendant’s alleged statement to him, could not, under Correction Law §§ 485 and 500-c, have been lodged in the same Hikers Island building as was defendant or eaten together in the same facility with defendant, who was then over 21. The Trial Judge denied the motion, ruling as to the sufficiency of the evidence that the jury had the right to decide which of the experts it would believe and that the expert testimony of the arson detective, together with the admission to Cruz and statements to Gary and the other evidence, was sufficient to meet the guilt beyond a reasonable doubt test and, as to the newly discovered evidence, that Cruz’s age was available during trial and thus was not newly discovered. The Appellate Division affirmed, without opinion.
 Before us defendant argues (1) that it was an abuse of discretion to deny the ilewly discovered evidence portion of his posttrial motion because he was not chargeable with knowledge that the meeting Cruz testified to was precluded by law, (2) that his statements were inadmissible because the product of seizure of his person without probable cause and because, as a matter of law, his consent had not been established, and (3) that his guilt was not established beyond a reasonable doubt. We conclude that the first contention is without merit[3] and the second is not *270 reviewable by us,* *[4] and, therefore, discuss only the third.
II
The claimed insufficiency of the evidence to meet the reasonable doubt standard is based not only upon the conflict between the two prosecution experts but also on the suggestion that defendant’s statements did not clearly refer to the Waldbaum’s fire as distinct from the Royal Farms Dairy fire or a third fire, of which defendant admitted knowledge. The latter contention need not long detain us, for the transcripts of defendant’s statements were in evidence and available to the jury. Although some of the admissions in them are unclear, they contained incriminatory admissions which the jury could find relate specifically to the Waldbaum’s fire.
To sustain his argument that the conflicting testimony of the People’s experts cannot constitute proof beyond a reasonable doubt, defendant invokes the rule of People v Stewart (40 NY2d 692); People v Reed (40 NY2d 204); and People v Ledwon (153 NY 10), recently reiterated by us in People v Foster (64 NY2d 1144), that the testimony of a single witness which is involved in hopeless contradiction cannot establish guilt beyond a reasonable doubt, and points to several Pennsylvania cases reasoning similarly with respect to conflict between experts presented by the party who bears the burden of proof.[5] The People counter that the resolution of conflict between opposing experts is generally a matter for the jury and that it should make no more difference that both experts were prosecution witnesses than it would have had the People advised defendant of the fire marshal’s opinion and defendant then called the fire marshal as a defense witness.
It is, of course, true that evidence is to be evaluated on the basis of its content and reliability rather than by whom it was introduced (see, People v Kirkpatrick, 32 NY2d 17, 21; People v *271 Farina, 290 NY 272, 274; People v Corbisiero, 290 NY 191; Pitler, New York Criminal Practice Under the CPL § 12.38). But the difference between the single witness situations dealt with by the Foster, Stewart, Reed and Ledwon cases (supra), relied on by defendant, and that of the present case is more fundamental and relates rather to the meaning of reasonable doubt.
A classic statement with respect to the relative functions of judge and jury respecting reasonable doubt is that of Justice Prettyman of the District of Columbia Court of Appeals in Curley v United States (81 DC App 389, 392-393, 160 F2d 229, 232-233, cert denied 331 US 837, reh denied 331 US 869):[6]
“The functions of the jury include the determination of the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences of fact from proven facts. It is the function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy. The critical point in this boundary is the existence or non-existence of a reasonable doubt as to guilt. If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. But if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. The law recognizes that the scope of a reasonable mind is broad. Its conclusion is not always a point certain, but, upon given evidence, may be one of a number of conclusions. Both innocence and guilt beyond a reasonable doubt may lie fairly within the limits of reasonable conclusion from given facts. The judge’s function is exhausted when he determines that the evidence does or does not permit the conclusion of guilt beyond reasonable doubt within the fair operation of a reasonable mind.
“The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly *272 conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. In a given case, particularly one of circumstantial evidence, that determination may depend upon the difference between pure speculation and legitimate inference from proven facts. The task of the judge in such case is not easy, for the rule of reason is frequently difficult to apply, but we know of no way to avoid that difficulty.”
When all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, the jury is left without basis, other than impermissible speculation, for its determination of either (People v Stewart, 40 NY2d, at p 699, supra).[1] That two or more witnesses give conflicting testimony, however, simply creates a credibility question for the jury (id.), to be determined by them in the context of the entire body of evidence before them. There may conceivably be situations in which two witnesses who, despite equal opportunity to observe and ability to describe, give diametrically opposed factual testimony and the other evidence in the case is so conjectural as not to rise to the level of proof beyond a reasonable doubt, no matter which version of the conflict between the two witnesses is accepted. Seldom, if ever, can that be the case, however, with respect to conflicting evidence given by expert witnesses, for expert opinion is predicated upon facts observed by the expert and testified to before the jury or assumed by the expert and established by the testimony of others, and in most cases each expert will have testified concerning his or her qualifications in the field to which the opinion given relates. There will, therefore, be a factual matrix against which the jury decides which opinion it deems acceptable[7]
[8] and *273 which, together with the accepted opinion, will, in all but the most unusual case, provide the basis upon which a rational trier of fact can conclude that guilt has been established beyond a reasonable doubt (cf. Matter of Anthony M., 63 NY2d 270).
Such is the situation of the present case. Defendant’s three statements to the authorities place him on the roof, making holes in it which were stuffed with paper and upon which an accelerant was then poured and lighted, and his admission to Cruz confirms his participation in setting the fire. Although corroboration of those statements was required (CPL 60.50), it need only be of circumstances “ ‘calculated to suggest the commission of crime, and for the explanation of which the confession furnishes the key’ ” (People v Murray, 40 NY2d 327, 332). Here the evidence presents no question concerning the fact that the fire occurred and was deliberately set. The conflict between the experts concerned whether it began on the roof and dropped into the mezzanine where it was first seen, or was set under the staircase to the mezzanine and traveled up. Testimony of Waldbaum employees who saw nothing untoward when they used the staircase shortly before discovery of the fire and who first observed flames some five feet above the mezzanine floor, and of firemen who used the staircase to reach the mezzanine without observing fire, provided a sufficient basis for the jury to conclude that the fire began on the roof as defendant stated and dropped down as the arson detective testified, in his expert opinion, it did. That the fire was not discovered until about 8:30 a.m., whereas defendant’s statement fixed his activity as “dawn,” “before daybreak,” and that defendant identified a turpentine can found after the fire inside the supermarket beneath the mezzanine staircase as “the can or similar to it” in which the “lighter fluid” about which he spoke had been contained, do not push this case over the line between “pure speculation and legitimate inference from proven facts” (Curley v United States, supra, at p 233). In light of the evidence that to reach the men’s room wall where it was first sighted the fire had to burn through the roof, which in part consisted of a second rain roof above the roof, and the cockloft flooring and onto the trusses above the men’s room, the time lapse between “dawn,” “about daybreak”* **[9] and about 8:30 a.m. is not so great as to render purely specula *274 tive the conclusion that the fire in the men’s room was the result of the fire set by defendant. And as to the turpentine can, the jury could find that defendant’s statement simply identified the type of can, rather than the particular can of the accelerant used, when he spoke of “the can or similar to it.”
For the foregoing reasons, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order affirmed.

. The reference is to an order of Supreme Court, Kings County, issued March 10, 1972, establishing the procedure whereby, on the basis of a letter *268 written by the District Attorney to the Warden of the Rikers Island House of Detention and consented to by the inmate, custody of the inmate is delivered to the police department for the purpose of interview by the District Attorney and return the same day to Rikers Island.

. He later identified a 32-ounce turpentine can as the type of container for the fluid.

. The facts concerning Cruz’s age and where he was housed were readily available prior to trial and defendant is, indeed, chargeable with *270 knowledge of the law (see, People v Shapiro, 4 NY2d 597, 600; People v Powell, 63 NY 88; 1 Wharton’s Criminal Law § 77 [14th ed]).

. Defendant being incarcerated for another crime, admissibility of his statements turns not on probable cause but on consent (cf. People v Whitaker, 64 NY2d 347, 352), and the evidence of consent was sufficient, notwithstanding the missing Damiani order, to sustain the finding of the hearing Judge which, after affirmance by the Appellate Division, is beyond our review (People v King, 61 NY2d 969, 971; People v Krom, 61 NY2d 187, 196).

. Mudano v Philadelphia R. T. Co. (289 Pa 51,137 A 104); see, Commonwealth v Gonzales 463 Pa 597, 345 A2d 691). Other courts have held to the contrary (see, e.g., Kosberg v Washington Hosp. Center, 394 F2d 947; Diggs v Lail, 201 Va 871,114 SE2d 743). See generally, 2 Jones, Evidence § 14.31, at 672 (6th ed); Ann , 53 ALR2d 1229.

. Although made in the context of a trial order of dismissal, the Curley statement is equally applicable to a motion for judgment notwithstanding the verdict and to review of the ruling on such a motion (see, Jackson v Virginia, 443 US 307, 318, n 11, and 319 [“the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt”] [emphasis in original]).

. That the falsus in uno instruction (CJI [NY] 7.06; 1 PJI2d 1:22) permits the jury to accept so much of a witness’s testimony as it believes true and reject such part as it deems false speaks to the weighing of the witness’s testimony against not only his own inconsistent statements but also the other evidence in the case. It is not inconsistent, therefore, with the conception that when the only evidence of guilt comes from a self-contradicting witness, the reasonable doubt standard has not been met.

. 1 CJI (NY) 7.13, with respect to conflicting expert opinion, advises the jury that: “Of course, in resolving any conflict that may exist in the testimony of the expert witnesses, you should carefully weigh the opinion of one expert against that of another. In doing so, you should consider the relative qualifica *273 tions and credibility of the expert witnesses, the reasons given for their individual opinions, and, especially, the facts and other circumstances upon which their opinions were based.”

. Defendant’s brief notes that the United States Naval Observatory Almanac states that sunrise occurred at 5:53 a.m. on August 2,1978. Although we can take judicial notice of that fact, it was not a fact before the jury.