THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FREDERICK D. JENNINGS, Appellant.

Second Department, January 29, 1973.

*Stephen W. Schlissel* for appellant.

*George J. Aspland, District Attorney* (*David F. Jordan* of counsel), for respondent.

HOPKINS, J. The defendant has been convicted, with the aid of his confession, of the murder of Mary Elouise Carman, aged 14 years, who disappeared on June 4, 1970 and whose body is claimed to have been discovered on August 21, 1970. As the body was decomposed and unrecognizable, the case falls into that class which one commentator has said " has proved troublesome " because " the body of the alleged victim was found bearing no signs of a fatal criminal assault " (Richardson, Evidence [8th ed.], § 347, p. 316).

The defendant has submitted several grounds for reversal, but the chief contentions are two: (1) that there was insufficient proof of the commission of the crime charged in addition to his confession (Code Crim. Pro., § 395); and (2) that his confession was illegally admitted into evidence, because of the conduct of the police in questioning him without giving him the required constitutional warnings on a day prior to the time the confession was elicited. For reasons which we state beyond, we affirm the conviction.

Mary Elouise Carman lived with her family in Wyandanch, Long Island. On the evening of June 4, 1970 she took part in a concert held at the school which she attended and then went to the home of a friend. At about midnight, she left for her home, accompanied by her friend and members of the latter's family. At an intersection they did not continue to walk with

her, but returned home, and Mary proceeded alone past a wooded area. She did not come home and was never seen alive again.

On August 21, 1970 Mary's father, while walking along the road on which she was last seen, noticed a white jacket a few feet into the woods and recognized it as part of the clothing Mary was wearing on the night she disappeared. Going further into the woods, he found the skeletonized remains of a body. At the trial the deputy medical examiner testified that he could not determine whether the body was male or female; nor could he ascertain the cause of death. Mary's family physician testified that except for a mild asthmatic condition, she had been in good health.

In the vicinity of the decomposed body, shoes were found; at the feet were other clothing, including a torn brassiere. The body was nude, lying on a coat. A ring was found on the right hand. The items of wearing apparel and the ring were identified as belonging to Mary.

The legs of the body were drawn up in a posture which was testified at the trial as compatible with sexual intercourse. On one of the undergarments evidence of a seminal stain was discovered. These facts, together with the torn and scattered state of the clothing, were claimed by the prosecution to indicate that a forcible rape had occurred.

At the trial the prosecution introduced proof that the teeth in the body matched a dental chart of Mary's teeth.[1] As this proof and the evidence of the items of wearing apparel are circumstantial and not direct proof that Mary's body was indeed found, or that death had occurred by criminal means, the defendant urges that the proof is insufficient to supply the evidence demanded by the statute in addition to the defendant's confession. We come, then, to the confession.

The defendant was confined to the Suffolk County Jail on charges unrelated to this indictment at the time of the discovery of the body. He was interviewed by the police on two occasions. On the first day he was not given the warnings required under *Miranda* v. *Arizona* (384 U. S. 436). The statements made by him at that time were excluded by the court after a *Huntley* hearing (*People* v. *Huntley,* 15 N Y 2d 72) and we agree with the court's ruling. As the defendant's statements on the second

---

1. The defendant assails the admission of this proof because the chart was not received into evidence. We have examined the evidence and we are satisfied that it was properly admitted. We think, too, that it cannot be contended, as the defendant attempts, that the examination of the body failed to establish four impacted wisdom teeth, which Mary's dental chart disclosed were in her mouth. We read the record otherwise.

interview, after the *Miranda* warnings were given, were admitted into evidence, and the defendant contends that they, too, should have been excluded because they emanated from the first day's questioning and were thus tainted, we must consider what the defendant said at both interviews.

The defendant was being held on two charges of rape. He was told by the police that they wanted to talk about the Carman case because of its similarity to the charges pending against him. At first he said little; after a break for lunch he asked the police why it had taken "so long for you to get to me?" He then stated he had seen the body at the point where it was actually found, but said that Mary had been killed by a friend of his through manual strangulation. He described the body as nude and lying on a coat and said that other clothes were lying near the body. He refused to tell his friend's name because he was not, he said, an informer. He remembered the night of the concert when Mary disappeared, because he had visited his girl friend at her home. He said that about a week after the concert his friend took him to the woods and there he saw the body.

The police determined after investigation that the defendant had no friend of the description given by him and that he had not visited his girl friend on the evening of the concert. They then returned to see the defendant, advised him of his rights under *Miranda* and questioned him again about the girl's disappearance. In the beginning he held fast to his statements concerning his friend and he intimated indirectly that the friend raped Mary before he strangled her. He also said there were ways to cause death by strangulation without breaking any bones. Finally, when he was told that the investigation had shown that he had not visited his girl friend's house on the night of the disappearance and that there was no such friend as he had described, he confessed that it was he who had killed the girl in the manner he had attributed to the friend.

We begin our discussion of the defendant's points by agreeing with him that without his confession he could not have been convicted. We consider first his claim that the conviction cannot stand on the confession, because of the requirements of section 395 of the Code of Criminal Procedure. That section, in effect at the time of trial,[2] provided that a confession "is not sufficient to warrant * * * [a] conviction, without additional proof that the crime charged has been committed." As was said by Chief Judge CARDOZO, the policy underlying this provision is

---

2. CPL 60.50, now in effect, for all practical purposes, reads the same.

akin to the considerations which supported the provisions of section 1041 of the former Penal Law, i.e.: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant, as alleged, are each established as independent facts; the former by direct proof, and the latter beyond a reasonable doubt" (*People* v. *Lytton,* 257 N. Y. 310, 314). That policy represents an aversion to convicting one on his own confession when a crime may not have been committed by anyone. However, that did not mean even under the two statutes referred to that the identity of the body in a case of an indictment charging murder had to be shown by direct evidence (*People* v. *Palmer,* 109 N. Y. 110, 113). The statutes rather created a standard of direct proof only for a death by a criminal agency (see *Ruloff* v. *People,* 18 N. Y. 179, 184; *People* v. *Brasch,* 193 N. Y. 46, 59; *People* v. *Reade,* 13 N Y 2d 42, 45).

The revision of the statute in 1967, however, did not recodify those requirements of section 1041 of the former Penal Law. The provisions of the new law made substantial changes in the definition and content of homicide and murder (Penal Law, §§ 125.00, 125.25); and the terms of former section 1041 relating to direct proof have been omitted (see McKinney's Cons. Laws of N. Y., Book 39, Penal Law, Table 2, "Distribution", p. LXIV). Hence, any form of proof, whether direct or circumstantial, will satisfy the criteria under section 395 of the Code of Criminal Procedure (now CPL 60.50).[3]

Nevertheless, the policy behind the statute remains that there must be proof that the crime charged was committed by someone. Where the cause of death is unexplained, doubt naturally arises whether a criminal agency was involved. In *People* v. *Cuozzo* (292 N. Y. 85), for example, the body of the victim had been mangled by a train, so that the defendant's confession that he had struck her with an iron bar and had placed her body on the tracks stood alone; in *People* v. *Shanks* (201 Misc. 511, affd. 279 App. Div. 1082), the proof in addition to the confession was merely that the victim had died from the effect of inhaling illuminating gas; and in *Ruloff* v. *People* (18 N. Y. 179, *supra*), all that was shown besides the confession was that the victim and her mother had disappeared together. In each of these cases it was held that the evidence outside the confession did not satisfy the statutory provisions. On the other hand, in *People*

---

3. We did not adopt the more liberal views of bordering States concerning the rule for the establishment of the *corpus delicti* (*State* v. *Johnson,* 31 N. J. 489; *State* v. *Tillman,* 152 Conn. 15; cf. 7 Wigmore, Evidence [3d ed.], §§ 2071, 2072).

v. *Brasch* (193 N. Y. 46, *supra*), the confession, together with evidence indicating motive and disappearance of the defendant's wife in his company, was held sufficient when death by drowning without more had been the cause of death.

Here the cause of death could not be established by an examination of the body, since the absence of the organs by decomposition prevented analysis. But we think the death of this young girl by a criminal agency is sufficiently proved by circumstantial evidence. She was in good health at the time of her disappearance; the body which was found near her home was proved in our opinion to be hers; the unusual posture of the body indicated sexual activity; and the scattered and torn condition of her garments implies an assault. These facts, taken together, adequately established death through criminal means.

The defendant's confession is not inconsistent with any of the facts. It described a forcible rape and a kind of strangulation which would not be exposed by bone fracture; and it displayed an accurate knowledge of the girl's movements on the evening in question and the site of the body. The confession may supply the key to the understanding of the circumstances of the evidence introduced beyond the confession (*People* v. *Jaehne,* 103 N. Y. 182, 199–200; *People* v. *Louis,* 1 N Y 2d 137; *People* v. *Bennett,* 49 N. Y. 137; *People* v. *Conde,* 16 A D 2d 327, affd. 13 N Y 2d 939; cf. *People* v. *Elmore,* 277 N. Y. 397). Moreover, the confession alone is enough to implicate the defendant; the independent evidence need not connect or even tend to connect the defendant with the crime (*People* v. *Taleisnik,* 225 N. Y. 489, 494; *People* v. *Clark,* 228 App. Div. 670).

We hold, therefore, that the statutory requirements concerning the corroboration of the defendant's confession have been met. The death of the victim by a criminal agency was sufficiently established by the circumstantial evidence presented at the trial. In passing, we observe that the defendant should not be shielded by the difficulty of arriving at the cause of death through the concealment of the body and its decomposition. Otherwise, the passage of time alone would defeat the efforts of the prosecution to prove the cause of death.

We turn to the validity of the defendant's confession under the *Miranda* standards. In essence, the defendant argues that the confession obtained after the delivery of the *Miranda* warnings came about because of the statements he made the day before without any such warnings. The circumstances here do not sustain that claim. Nothing in this record remotely suggests that any of the statements made on either occasion were made

involuntarily. There is no showing that the earlier admissions so dominated the defendant's mind on the later occasion that he was compelled to speak. Instead, the proof is that he first engaged in a maneuver to detour the inquiry from himself to a fictitious friend. Only when confronted with the knowledge that his maneuver had failed, and after proper *Miranda* advice, did he confess. "It is clear, therefore, that the mere fact a defendant makes a statement to the police before he has been adequately warned of his constitutional rights does not, in itself, render inadmissible a later voluntary statement made to a police officer after complete monitions have been given" (*People* v. *Stephen J. B.*, 23 N Y 2d 611, 615).[4]

The question, therefore, is not whether, as the defendant urges, the falsity of the first statement made without *Miranda* warnings led to the second made following *Miranda* warnings. Unquestionably, suspicion centered on the defendant when the falsity of his story became known. The true question, on the other hand, is whether on either occasion the statements were involuntary by reason of coercion, deception or other pernicious conduct on the part of the police (cf. *People* v. *Tanner,* 30 N Y 2d 102, 106).

On this record, as we read it, there is no evidence of oppressive tactics used against the defendant. When he incriminated himself, he did so only after proper warnings and without improper inducements. The confession was therefore correctly admitted into evidence.

We have examined the other claims of error raised by the defendant and find them meritless. We accordingly affirm the judgment.

RABIN, P. J., MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Judgment of the County Court, Suffolk County, rendered August 5, 1971, affirmed.

---

4. We do not believe that the doctrine in *Stephen J. B.* has been affected by the later decision concerning the same defendant in the Federal courts (see *United States ex rel. Stephen J. B.* v. *Shelly,* 430 F. 2d 215). As we read the opinion of the Second Circuit, the disagreement as to the validity of the confession there hinged not on the doctrine, but on the view of the circumstances bearing on voluntariness.