Gabrielli, J.
Defendant was indicted for the crimes of common-law murder, felony murder, two counts of attempted robbery, attempted grand larceny and possession of a weapon as a felony. He had admitted and confessed to a police officer that during the course of attempting to rob a man sleeping in an automobile, a struggle ensued, and he stabbed and killed a man.
The critical issue presented is whether, in a felony murder prosecution based upon a full confession of guilt, the confession corroboration statute (CPL 60.50) requires the People to prove the commission of the predicate felony by evidence independent of that contained in the confession. Determination of this issue turns on the meaning ascribed to the rule set forth in CPL 60.50, which provides that:
"A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed.”
While the wording of CPL 60.50 differs slightly from that of its 1881 predecessor (Code Crim Pro, § 395), the Legislature manifested no intention of changing the meaning or requirements of the confession corroboration rule when it enacted the CPL in 1971 (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.50, p 331).[1]
Following a pretrial confession suppression hearing, defendant’s statement, made to Mount Vernon Police Detective Frank Tetro, was held to have been voluntarily made and admissible in evidence. At trial, Detective Tetro testified that after administering the standard preinterrogation admonitions (see Miranda v Arizona, 384 US 436), defendant described what had occurred at 6:00 a.m. on August 5, 1972 on West *330 Third Street in Mount Vernon. According to this evidence, defendant stated that as he walked along that street, he saw a man slumped over the steering wheel of a car, apparently sleeping, and decided that "he would take him [the victim] off”. After unsuccessfully attempting to enter the car, defendant opened the driver-side door, awakened the victim and said, "Man, do you know you can be taken off here? You can be mugged”. Whereupon the victim answered, "Don’t worry. I can take care of myself’, and offered the defendant some french fries. Detective Tetro further testified that "it was then that [defendant] stated that he said to the victim, T’m going to take you off. Give me all your money.’ With this, the victim turned in the seat of the car. As he was getting out, he kicked [defendant], knocking him to the ground. The victim got out of the car. He was standing against the door. [Defendant] said he got up off the ground, punched the victim. The victim in turn punched him and knocked him back to the ground again and he said at this time he had an open knife in his pocket, took it out of his pocket, got up off the ground and plunged the knife into the victim. He said he stood there and he seen blood coming out of the victim’s shirt. He said at this time he panicked, and he ran around the car and went into the hallway of 57 West Third, out to the backyard, where he "stated he dropped the knife, and continued out, jumped the fence and went out onto Eighth Avenue.” Medical testimony showed that the fatal knife wound entered the victim’s heart from a left to right angle of 15 degrees and was from three and a half to four and a half inches deep. There was evidence, via the autopsy, that the victim’s brain showed a .20% blood alcoholic content at death, and that he had french fries and nonred meat in his stomach. Other evidence established the presence of french fries spread in and about the vehicle.
Defendant took the stand in his own defense and denied the statements attributed to him by Officer Tetro. He claimed that the victim was an illicit drug supplier known as "Tee” to whom he, an addict and small-time pusher, owed money. He asserted that, in the course of a disagreement and resultant struggle over the quality of drugs supplied to him and the amount of money he owed therefor, he stabbed "Tee” in self-defense and then fled from the scene.
After the prosecution had rested, the Trial Judge granted a defense motion to dismiss the attempted robbery and larceny counts on the ground that the prosecution had not corrobo *331 rated the confession as to commission of those crimes. The jury was charged as to the remaining three counts and also as to manslaughter, first degree, as a lesser-included offense of the common-law murder count. The jury found defendant guilty of felony murder, manslaughter, first degree, and felonious possession of a weapon. These convictions were affirmed by an unanimous Appellate Division.
The effect of the confession corroboration statute is to require proof of the corpus delicti (People v Reade, 13 NY2d 42, 45), a requirement universally followed by other States (see Ann., 45 ALR2d 1316). Generally, proof of the corpus delicti requires a showing: (1) that a loss has occurred (i.e., in a homicide, a deceased person) and (2) that the loss resulted from somebody’s criminality (People v Bennett, 49 NY 137, 143; 7 Wigmore, Evidence [3d ed], § 2072).[2] The purpose of the first element is to establish that the loss or death actually did occur and the purpose of the second element is to insure that the loss or death did not occur as the result of an accident, suicide, disease or other natural cause; or, put another way, that the loss or death did in fact occur as the result of human agency (see Wigmore, op. cit., pp 401-402). The requirement has never been extended, insofar as our research reveals, to require negation of any possible claim of self-defense. Indeed, the requirement of proving the corpus delicti evolved at common law apart from any justification defense concerns (see, generally, Note, 103 U Pa L Rev 638). It arose principally from the confluence of two factors: first, the shock which resulted from those rare but widely reported cases in which the "victim” returned alive after his supposed murderer had been convicted (see, e.g., Trial of Stephen and Jessie Boorn, 6 Am St Trials 73; see, generally, State v Howard, 102 Ore 431; cf. Smith v United States, 348 US 147, 153);[3] and secondly, the general distrust of extrajudicial confessions stemming from the possibilities that a confession may have been erroneously reported or construed (see State v Saltzman, 241 Iowa 1373, 1379; Commonwealth v Turza, 340 Pa 128, 134), involuntarily made (see, e.g., Brown v Walker, 161 US 591, 596-597), mis *332 taken as to law or fact,[4] or falsely volunteered by an insane or mentally disturbed individual (see People v Buffom, 214 NY 53, 57).
Consonant with this rationale, the Legislature codified the common-law rule (see People v Bennett, 49 NY 137, 143, supra) and enacted what became CPL 60.50 which requires additional proof of the crime to obviate the "danger that a crime may be confessed when no such crime in any degree has been committed by any one” (People v Lytton, 257 NY 310, 314; see People v Daniels, 37 NY2d 624, 629). The additional proof need not be direct evidence linking the defendant to the crime (People v Brasch, 193 NY 46, 59). It sufficies to show corroborating circumstances "which, when considered in connection with the confession are sufficient to establish the defendant’s guilt in the minds of the jury beyond a reasonable doubt” (People v Conroy, 287 NY 201, 202). Moreover, it is not necessary that the proof include "every reasonable hypothesis save that of guilt” (People v Cuozzo, 292 NY 85, 92). As we wrote in People v Jaehne (103 NY 182, 199-200) and repeated in People v Reade (13 NY2d 42, supra): "when, in addition to the confession, there is proof of circumstances which, although they may have an innocent construction, are nevertheless calculated to suggest the commission of crime, and for the explanation of which the confession furnishes the key, the case cannot be taken from the jury”. Thus, we have said that "presence at the scene, proof of motive, evidence of flight and other conduct indicating a consciousness of guilt may * * * be held to constitute the essential additional proof’ (Reade, supra, at p 46). Indeed, "the statute is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone” (People v Daniels, 37 NY2d 624, 629, supra).[5]
We hold that the proof adduced here was sufficient and adequate to satisfy the requirements of CPL 60.50. The prosecution established the corpus delicti aliunde the confession by showing the fact of death and that the cause thereof was a *333 knife wound, a nonnatural cause. In addition, the evidence of the depth, angle, and accuracy of the wound further corroborates the fact that the wound was not accidental. And even were all that evidence not sufficient, which it clearly is, it was also shown, apart from the confession, and as Reade (supra) states to be satisfactory "additional proof’, that the defendant was present at the scene of the crime, that he had a motive (i.e., to rob the victim to support his drug habit) and that after the stabbing, the defendant fled from the scene. In fact, the defendant’s in-court testimony establishes each of these corroborating circumstances. We conclude, therefore, that the confession was corroborated by abundant evidence and, as could be found by the jury, beyond a reasonable doubt.[6]
We reject, as this court has done on at least four other occasions (People v Louis, 1 NY2d 137; People v Gold, 295 NY 772; People v Lytton, 257 NY 310, supra; People v Joyce, 233 NY 61), the argument that evidence of the underlying felony must be corroborated in a felony murder prosecution. In Lytton, Chief Judge Cardozo held that the evidence corroborating the identification of the defendant as the person who fired the fatal shots along with the additional evidence showing "the body, bearing tokens of a fatal wound”, was "sufficient to confirm confession of a homicide” (p 314); and he also made clear that the confession corroboration rule does not require that the particular degree of the homicide be confirmed. Thus, the argument that a different measure of corroboration was necessary in a felony murder case than in one involving common-law murder was found lacking. Likewise, in People v Louis (1 NY2d 137, 140-141, supra) the court *334 held that in establishing a felony murder charge, "there [is] no need for evidence, separate and apart from the [defendant’s confession] of the underlying felony” (see, also, People v Gold, supra; People v Joyce, supra; cf. People v Roach, 215 NY 592, 601). No reason appears to require us to now depart from these sound, established precedents.
Nor is the New York rule unique. In People v Cantrell (8 Cal 3d 672) the California Supreme Court unanimously rejected the claim that the People need establish the corpus delicti of the underlying felony to introduce a defendant’s extrajudical statements. Held sufficient there were statements by the defendant that he had been sexually molesting the victim immediately before he strangled him, thereby establishing the requisite felony upon which the felony murder charge was based.
Defendant contends nevertheless that the dismissal of the underlying felony counts perforce requires dismissal of the felony murder charge. However, we have only recently rejected that very argument (People v Dennis, 33 NY2d 996, affg 40 AD2d 959). Moreover, any claim of double jeopardy or collateral estoppel is untenable upon the facts of this case for it is manifest that the dismissal of the predicate felonies was solely the result of the lack of corroborating evidence thereof, and not any failure to prove the crimes beyond a reasonable doubt. Hence, the factual question whether defendant committed the acts charged was left open for the jury, their having conclusively decided the issue in favor of the prosecution.
We find no merit in the additional argument that the change in form of indictments (see CPL 200.50) effected by the enactment of the CPL in 1971 was in any way intended to alter or strengthen CPL 60.50. As noted at the outset, the drafters of CPL 60.50 intended no change in its scope and retained "the corroboration rule enunciated in Criminal Code § 395” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11B, CPL 60.50, p 331). No legislative history exists to support a contrary conclusion.
The confession corroboration rule does not require that each element of the crime of felony murder be established by evidence apart from the confession. Indeed, Professor Wig-more called several aberrant holdings requiring such additional proof "too absurd to be argued with” (7 Wigmore, Evidence [3d ed], § 2072, subd [3]). As has been made plain, "the confession alone is enough to implicate the defendant; *335 the independent evidence need not connect or even tend to connect the defendant with the crime” (People v Jennings, 33 NY2d 880, affg on the opn thereat 40 AD2d 357, 362). By requiring the production of additional proof aliunde the confession the dissenters are urging the adoption of a "second best” evidence rule, ironically preferring circumstantial proof of the actor’s aim over his own assessment of what he thought he was doing. In short, the purpose of CPL 60.50 is to establish that the deed was done and by a human agency; thereafter, the truth of the confession and the proof of intent is for the jury.
As to the felony murder conviction, I would further add that some of us hold that even if the rule posited by the dissenters were to be applied in this case, an affirmance would nonetheless be required. There was sufficient evidence of the predicate felony to satisfy the meager requirements of CPL 60.50, as indicated by the signs of a struggle, the clothing of the victim being in a state of disarray and, further, that his wallet, later recovered and returned to the family of the victim, was not found at the scene (see People v Daniels, 37 NY2d 624, supra; People v Jennings, 33 NY2d 880, affg 40 AD2d 357, 362, supra).
A defense request that, on the common-law murder count, the Trial Judge charge the jury as to manslaughter, second degree, was denied. Upon this record, this was error (People v Tai, 39 NY2d 894).
Accordingly, the order of the Appellate Division should be modified to the extent of reversing defendant’s conviction of manslaughter, first degree, and a new trial granted thereon; and, except as so modified, the order should be affirmed.

. Section 395 of the Code of Criminal Procedure reads:
“A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor; but is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed.”

. At one time some States also required proof of the identity of the wrongdoer (see 7 Wigmore, Evidence [3d ed], § 2072, subd [3]). However, that requirement no longer appears to be the law anywhere (see Ann., 45 ALR2d 1316; 3 Wharton’s Criminal Evidence [13th ed], § 691).

. In the Boorn case, the two defendant brothers had confessed, were convicted and sentenced to be hanged when the "victim” appeared alive.

. See, e.g., Gardner v People (106 Ill 76), where an immigrant unable to understand English confessed to a murder that may actually have been noncriminal homicide; and State v Johnson (95 Utah 572) where the defendant confessed to smothering a baby as it was born when in fact the baby may have been stillborn.

. The additional requirement of proving intent without reference to the confession, propounded by the dissenters, is a derelict in the law. It is the universal rule that apart from the confession some evidence, but not evidence proving guilt beyond a reasonable doubt, is required (Ann., 45 ALR2d 1316, 1331-1333, and Supps, citing decisions in at least 27 States and the United States Supreme Court).

. We would emphasize, contrary to suggestions in the dissenting opinion, that the jury verdict is rational and readily explainable. While the jury obviously concluded by its acquittal on the common-law murder charge that defendant did not cause the death of the victim with the intention of so doing, they nevertheless could properly have found, as they did, consistent with the evidence, that defendant feloniously possessed a weapon and, in the course of attempting to commit robbery, intentionally caused serious physical harm to the victim which caused his death, thereby committing the crimes of felonious possession of a weapon, manslaughter, first degree, and felony murder. It is significant that the intent to cause the death of another person is an element of common-law murder (then Penal Law, § 125.25, subd 1, which, in pertinent part, read: "A person is guilty of murder when: 1. With intent to cause the death of another person, he causes the death of such person”); and obviously is not an element of felony murder (then Penal Law, § 125.25, subd 3, which, in pertinent part, read: "A person is guilty of murder when: 3. * * * he commits or attempts to commit robbery * * * and, in the course of and in furtherance of such crime * * * he * * * causes the death of a person”).