*1013 OPINION OF THE COURT
Louis B. Scheinman, J.
This motion to dismiss the indictment for legal insufficiency of the evidence before the Grand Jury was initially part of defendant’s omnibus motion. The other matters on said omnibus motion having been resolved, this decision will concern itself solely with said application to dismiss.
The indictment charges the defendant, in five separate counts, with murder in the second degree of five persons, under subdivision 2 of section 125.25 of the Penal Law, the "depraved indifference to human life” statute.
The alleged crimes arose out of a most tragic fire which consumed a wood frame apartment building in Monticello on April 9, 1978 resulting in the death of five persons.
In the police investigation which ensued, the defendant was interrogated and made a statement involving himself in the occurrence of the fire, which statement was reduced to a two-page writing, herein referred to as the confession. In substance, this confession stated that the defendant had been drinking heavily the evening before the fire. After midnight, intoxicated, the defendant, carrying a bottle of wine, went into the apartment building to visit a friend, evidently on one of the lower stories of the building. Since the friend was not home, the defendant started walking up the steps to the next floor in order to visit another friend. On his way, he sat down on the steps and drank more wine, then continued walking up the steps and stopped on a landing between the two floors, lit a cigarette and threw the match which landed on some papers, igniting them. He tried to extinguish the fire but could not, then "got scared and went back downstairs and left the building”. He went to his home (evidently a short distance away) where he later heard the fire engines, learned of the fire and that people were trapped in the building, dressed and went back to the apartment house to see if he could help the firemen, attempting to do so. His confession further states as follows:
Q. "Did you intentionally set the fire?
A. "No, I swear, I didn’t mean it. It happened just the way I told you.”
A police officer with special training in arson investigations testified that, based upon his conversation with two policemen who had been in the building while it was on fire, and from *1014 his inspection of the building at the time, that it was his opinion that the fire started in the area at "the top of the stairway, the front stairway and the hallway on the second floor which would be at the top of the stairs.”
The only other testimony before the Grand Jury relating to the occurrence of the fire was from a fireman who had received the alarm, evidently by telephone, from a tenant who had stated to him that there was a fire in the hallway.
Questions of law thus raised are threefold: (1) whether there was sufficient corroboration of the confession; (2) whether corroboration of a confession is required for indictment; and (3) whether the conduct of the defendant as set forth, with the unfortunate results, constituted the crimes charged, or any lesser included offense thereof.
CPL 60.50 provides: "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed.”
Consequently, there must be proof of the corpus delicti to corroborate the confession. (People v Murray, 40 NY2d 327, 331; People v Reade, 13 NY2d 42, 45.) In addition to proof of the deaths, there must be a showing of somebody’s criminality (People v Murray, supra; 7 Wigmore, Evidence [3d ed], § 2072) in order to establish the corpus delicti, which necessarily includes the human agency. Thus, in the case at bar, the proof additional to the confession that the fire started in the stairway without proof of its incendiary origin by any person fails to meet the requirements of corroboration of the confession.
Next, is corroboration of a confession required for indictment? The Second Department in People v Clarkson (50 AD2d 903) held that although a defendant may not be convicted of an offense upon the testimony of an accomplice under CPL 60.22 (subd 1) without corroboration, that such corroboration was not required for indictment where the evidence otherwise meets the standards of CPL 190.65.
In People v King (48 AD2d 457), the First Department held in a conspiracy case, that corroboration is not deemed an element of the crime, and that its absence does not preclude the establishment of the prima facie case before the Grand Jury, citing Matter of Ruggiero (40 AD2d 135) and People v Johnson (46 AD2d 55, 58). Said cited cases point out that corroboration is a procedural device and not an element of the crime.
*1015 This court is mindful of the principle of law clearly stated in the dissent in People v Mayo (36 NY2d 1002, 1005), to the effect that the test of whether "legally sufficient evidence” required by CPL 190.65 is present is whether there has been a clear showing that the evidence before the Grand Jury if unexplained and uncontradicted would warrant conviction by a trial jury. This test, stemming from section 251 of the Code of Criminal Procedure, has been carried over to construe the meaning of "legally sufficient evidence” in the CPL. (People v Dunleavy, 41 AD2d 717, affd 33 NY2d 573; People v Shanklin, 59 AD2d 588, 589.) "In the context of Grand Jury procedure, legally sufficient means prima facie” (People v Mayo, supra, at p 1004).
Further, CPL 70.10 (subd 1) provides that evidence is not "legally sufficient” when corroboration required by law is absent.
It is, indeed, difficult to understand how, since upon a trial, the People’s case bottomed exclusively upon an uncorroborated confession, must be dismissed, that the above test could be met by the evidence before the Grand Jury in the subject case.
Yet, the only cases dealing directly with the question of lack of corroboration in Grand Jury proceedings since the adoption of the CPL are King and Clarkson (supra) and this court feels constrained to follow the same, holding that corroboration of a confession is not required for indictment.
Although I do not so hold, it seems to me that it is dangerous to place in the hands of any prosecutor or Grand Jury the awesome power to indict upon evidence which would be insufficient in law to convict for any reason, in the hope that the missing proof (corroboration) will turn up before trial.
Turning to the remaining question of whether the conduct of the defendant, as described in his confession, resulting in five deaths, constitutes the crimes charged, or any lesser included offenses, I find that it does.
Both the crimes of manslaughter in the second degree and criminally negligent homicide are "lesser included offenses” of the crime of murder in the second degree (Penal Law, § 125.25, subd 2) under CPL 1.20 (subd 37) and a jury could find either under facts described in the confession.
While the facts would not support convictions of murder in the second degree as the acts of defendant were not "perpe *1016 trated with a full consciousness of the probable consequences” (Darry v People, 10 NY 120, 147), nor, in addition to recklessness, conduct of depraved indiffierence to human life (see discussion in People v France, 57 AD2d 432) they could support a verdict of guilt of either of the lesser crimes mentioned above.
Dropping a lighted match onto a paper strewn floor in a wood framed building, with an awareness that a fire could ensue, together with the knowledge that the building was occupied with persons asleep therein could be found to be a reckless act. (Penal Law, § 15.05, subd 3; manslaughter in the second degree, Penal Law, § 125.15, subd 1.)
Similarly, criminal negligence could alternatively be found by a jury under these facts in finding that, although unaware of the risk, he failed to perceive the substantial or unjustifiable risk, which was a gross deviation from the standard of care that a reasonable person would have observed (Penal Law, § 15.05, subd 4; criminally negligent homicide, Penal Law, § 125.10).
Further, I believe that public policy should require, under penalty of criminal sanction, that one who creates, by his own conduct, whether criminal or noncriminal conduct, a grave risk of death or injury to others has a duty and obligation to alleviate the danger, or, at the very least, to prevent the injury or death by alerting the probable victims to the danger. The terms "act” and "conduct” mentioned in the above statutory definitions should be construed to include acts of omission as well as commission. Authority for this holding is found in section 15.10 of the Penal Law which provides that "[t]he minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. ” (Emphasis supplied.)
This court is mindful of People v Hoffman (162 Misc 677), a Court of General Sessions case which found no criminal liability on facts quite similar to those at bar. However, said case was decided under the old Penal Law of 1909, which law did not include any predecessor section to article 15 of the 1965 Penal Law specifically referring to acts of omission as sufficient to establish criminal conduct. (See Penal Law, § 15.00, subds 3, 4; § 15.10.) Defendant’s alleged omission or failure to either put out the fire he carelessly started or alternatively to give reasonable notice of the danger created *1017 could readily be judged as either reckless or criminally negligent conduct by a trier of the facts.
Accordingly, the motion to dismiss this indictment is denied.