The People of the State of New York, Appellant, v
Leonard Lipsky, Respondent.

Fourth Department, December 23, 1981

APPEARANCES OF COUNSEL

*Donald O. Chesworth, District Attorney (Kenneth Fisher*
and *David L. Pogue* of counsel), for appellant.

*Edward J. Nowak, Public Defender* for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J.

Based on his confession to the crime, the defendant was
convicted of murder in the second degree for the death of
Mary Robinson. Although there was unrefuted proof of her
disappearance, there was no direct proof of her death. A
body identified as that of Mary Robinson was never found.
After defendant's postverdict motion pursuant to CPL
330.30 (subd 1), the trial court set aside the verdict and
dismissed the indictment holding that there was insuffi-
cient proof outside the confession that the offense charged
had been committed as required by CPL 60.50. The People
appeal and we affirm.

At about 1:30 A.M. on June 10, 1976, Mary Robinson
called her husband at his hotel room in Rochester. He had
last seen her at 8:30 P.M. on June 9 between the Americana
Hotel and the Holiday Inn. She was wearing a dress, light
jacket and white sandals and carried a white purse. She

wore glasses. Mary Robinson was never seen or heard from again.

On October 16, 1978, defendant was arrested in Provo, Utah, on an assault charge as a result of an incident involving a young woman. After his plea of guilty, the court ordered him held pending the completion of a presentence evaluation. On January 31, 1979, while being interviewed by a psychiatric social worker, defendant said that he had committed a previous crime and wanted to clear it up. Although advised that whatever he said could not be kept confidential, he voluntarily gave a confession a few days later to the social worker and a probation officer. Defendant related that he had had sexual intercourse with a prostitute in his apartment and had strangled her in a fit of anger when she tried to leave. He put the body in the trunk of his car and drove for three hours to a point south of Rochester where he dumped the body in a gully. When asked for a name, place and date, he wrote on a slip of paper: "Mary Robinson, June 14, 1976, Rochester, New York." Subsequent police investigation revealed that defendant had previously told co-workers that he could not join the Mormon Church because he had committed a crime and that he had composed an incriminating poem describing his conscience-stricken existence which concluded: "So I now live for two; by my hand one has died."

Upon receipt of the details of defendant's confession, Rochester Police investigators developed that Mary Robinson had been reported missing by her husband on June 11, 1976. She had at the time been operating as a prostitute from the Americana Hotel and also from the Holiday Inn where it was learned the defendant had been employed. A check with police authorities in the Southern Tier and in the northern part of Pennsylvania revealed that no body had been discovered matching the description of Mary Robinson. Alerted by the publicity, defendant's former girlfriend, Marsha Hanrahan, produced a pair of white sandals and a white purse containing thick wire-rimmed eyeglasses, Mary Robinson's plaid wallet, her police identification card and Social Security card, and other items including various photographs. At the trial, her husband identified the purse and the wallet as the ones his wife had

been carrying on the night she disappeared and the photographs as pictures of his wife, her mother, his niece and other relatives. He stated the signature on the Social Security card was that of Mary Robinson and identified her handwriting on other papers. Other items produced by Marsha Hanrahan he recognized as his wife's. The glasses he said he had purchased for his wife and repaired several times. They were thick; she had difficulty seeing without them, he said, and she wore them constantly during waking hours.

Marsha Hanrahan testified that in June of 1976 she and defendant were engaged and that he had moved in with her from his apartment at 77 Brooks Avenue. On June 14 or 15 upon her return to the apartment from a vacation on Cape Cod, she found the defendant "emotionally wrought." A few days later he said he was leaving Rochester — something he had never before mentioned. About a week after her return from Cape Cod when she was helping defendant pack his belongings at 77 Brooks Avenue, Marsha Hanrahan found a white purse and a pair of white sandals in a cupboard. Defendant told her that the items belonged to a former tenant and that she could keep them. Shortly thereafter defendant left Rochester. Although he asked her to, she did not go with him. There was evidence that defendant had preregistered for the fall semester at Monroe Community College. Defendant's former landlord at 77 Brooks Avenue testified that he had cleaned out the premises before defendant moved in and that there were no shoes, purse or glasses in the apartment. Defendant, he said, had moved out in June, 1976 giving only a week or 10 days' notice.

Mary Robinson's husband, her sister-in-law and her mother-in-law, all of whom saw her frequently, testified that they had not heard from her since her disappearance. Her husband testified that he had checked his wife's clothes and belongings when she failed to appear and found nothing missing except the items she was wearing or had with her on the evening of June 9. There was proof that there had been no activity in Mary Robinson's Social Security account since the first half of 1976.

Prior to trial, the circumstances surrounding defendant's statements to the social worker and probation officer were explored in detail in a suppression hearing *(People v Huntley,* 15 NY2d 72). The court determined that defendant's statements were entirely voluntary, that there had been no improper police conduct, that defendant had initiated the conversations about his involvement in the homicide and that the statements were not the product of interrogation. The social worker and the probation officer both testified at the trial, and the statement was admitted in evidence (102 Misc 2d 19). No issue is raised by defendant here as to the voluntariness or the admissibility of his statements.

In granting the motion and dismissing the indictment, the trial court noted that there was no direct proof of death and concluded: "If death can be inferred by circumstantial evidence there still was no proof that the death, if any, was caused by a criminal act. This then is the defect in the case; no proof that death was caused by a criminal act." The court noted that although strong circumstantial evidence corroborated the truth of the confession, such evidence could never suffice in the absence of independent proof that the crime was committed. We agree with these statements.

It has long been the law in New York, now codified in CPL 60.50 (see *People v Murray,* 40 NY2d 327, 332, cert den 430 US 948), that a defendant cannot be convicted solely upon his own confession or admission (see *People v Daniels,* 37 NY2d 624, 629). Proof independent of the confession that the crime charged has been committed, i.e., of the corpus delicti, is required "which 'in case of murder or manslaughter, means the body of a crime, and is divided into two component parts, the first of which is the death of the person, and the second is that the death is produced through criminal agency' *(People* v. *Benham,* 160 N.Y. 402, 425; *Ruloff* v. *People,* 18 N.Y. 179, 192)" *(People v Cuozzo,* 292 NY 85, 91). It is settled that the additional evidence of the criminal agency need not be by direct proof (see *People v Cuozzo, supra,* p 92; *People v Brasch,* 193 NY 46, 59; *People v Pettis,* 62 AD2d 1110) and that the confession itself "may be used as a key or clue to the explanation of circumstances, which when so explained, establish the criminal act. *(People* v. *Jaehne,* 103 N.Y. 182, 199, 200.)"

*(People v Cuozzo, supra,* p 92.) While in some jurisdictions it is sufficient if the corroborating facts tend to produce confidence in the truth of the confession (7 Wigmore, Evidence [Chadbourn rev], § 2071, n 3; see, also, 46 Fordham L Rev 1205, 1217-1220), New York remains a jurisdiction where independent proof of the corpus delicti is required *(People v Cuozzo, supra,* pp 91-93).

The question here is whether in a case where the victim's body has not been found, the requirement of CPL 60.50 has been satisfied by proof that the victim has disappeared, that some items which were in her possession when she was last seen were found in the defendant's apartment, that the defendant gave a false explanation for the presence of the items, and that he left town shortly thereafter.

We have discovered no New York decision upholding a murder conviction where the body of the victim has not been found. In the leading case on the point, *Ruloff v People (supra),* the Court of Appeals overturned a murder conviction where the fact of death was established entirely by circumstantial evidence. The evidence showed that the defendant's wife, with whom he had lived unhappily, and his infant daughter disappeared, that the day after they were last seen alive the defendant put a box into a wagon and drove away, returning the following day, and that he moved to Chicago soon thereafter. The rule set forth by the *Ruloff* court is restated in *People v Bennett* (49 NY 137, 143) as follows: "The *corpus delicti* has two components, viz.: Death as the result, and the criminal agency of another as the means, and all that the court decided in the *Ruloff Case* was, that *there must be direct proof of one or the other.* The court adopted the rule of Lord HALE, who said: 'I would never convict any person of murder or manslaughter, unless the fact was proved to be done, or, at least, the body found dead.' The court review[ed] numerous authorities to sustain the decision, which is, unquestionably, a just and sound rule" (emphasis added). The *Ruloff* court, citing numerous cases including one in which a "victim" reappeared after her uncle had been executed for her murder,[*]

---

[*] This is one of two cases mentioned by Lord HALE in his writings (2 Hale, The History of the Pleas of the Crown, p 290) in which the homicide "victim" reappeared after

explained the policy considerations underlying its rule: "If it be objected [that the rule of this case] may compel the acquittal of one whom the jury are satisfied is guilty, the answer is, that the rule * * * must be regarded as part of the humane policy of the common law, which affirms that it is better that many guilty should escape than that one innocent should suffer; and that it may have its probable foundation in the idea that where direct proof is absent as to both the fact of death and of criminal violence capable of producing death, no evidence can rise to the degree of moral certainty that the individual is dead by criminal intervention" *(Ruloff v People, supra,* p 184).

The abhorrence, reflected in *Ruloff (supra),* of convicting someone of murder when in fact the "victim" was still alive was recognized by the Legislature in its enactment of section 1041 of the Penal Law (not re-enacted in 1967) (formerly Penal Code, § 181) which set forth a strict requirement that in every murder and manslaughter case there must be direct proof of the death and proof beyond a reasonable doubt of the killing by the defendant (see *People v Benham,* 160 NY 402, 425, *supra).*

Since *Ruloff* and *Bennett (supra),* in every reported New York homicide case that has been cited, there has been unrefuted direct proof of the death. In the few cases in other jurisdictions where a conviction has been upheld absent direct proof of the death, the courts have required "strong and unequivocal" *(United States v Williams,* 28 Fed Cas No. 16, 707, pp 636, 642) circumstantial evidence. (See, e.g., *King v Hindmarsh,* 2 Leach 569, 168 Eng Rep 387, in which the defendant's conviction of murder on the high seas by beating the captain of a ship was upheld despite the absence of direct proof that the captain was dead. The evidence was: the defendant had proposed to another mariner to kill the captain; an eyewitness saw the defendant throw the captain into the sea; the captain was never seen

the execution of the alleged murderer. In this case, the uncle was suspected of the murder of his ward because she disappeared after she had been heard begging the uncle not to kill her. After the failure of his attempt to deceive the court by producing a substitute who he claimed was his ward, he was convicted of her murder and executed. When the ward came of age, she reappeared to claim her land, saying that she had run away. In the other case, the "victim", who had been kidnapped and sent to sea, returned less than a year after a man was executed for his murder. For other such cases, see 48 Va L Rev 173.

or heard from again; a large piece of wood was found on the deck; and blood stains were found on the deck and on defendant's clothing; see, also, *People v Cullen,* 37 Cal 2d 614; *United States v Williams, supra;* 48 Va L Rev 173.)

The People argue, citing more recent cases and the Legislature's failure to re-enact section 1041 of the Penal Law that the traditional rule has been relaxed to the point where evidence of the type present in this case would be sufficient (see *People v Jennings,* 40 AD2d 357, 361, affd on opn below 33 NY2d 880). In particular, they argue that the confession can be used to supply the "key" for the explanation of " 'circumstances which, although they may have an innocent construction, are nevertheless calculated to suggest the commission of crime' " *(People v Reade,* 13 NY2d 42, 45) and that CPL 60.50 "is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone" *(People v Daniels,* 37 NY2d 624, 629, *supra;* see *People v Murray,* 40 NY2d 327, 332, cert den 430 US 948, *supra).* In all the cases cited to the effect that the confession may serve to explain ambiguous proof in addition to the confession, the first element of the corpus delicti — the loss — has been irrefutably established. In *People v Murray (supra), People v Cuozzo* (292 NY 85, *supra), People v Brasch* (193 NY 46, *supra),* and *People v Jennings (supra),* the body of the victim had been found. In *People v Reade (supra), People v Anderson* (80 AD2d 33), and *People v Guernsey* (46 AD2d 698), all arson cases, the result of the criminal conduct, the fire, was not in dispute. In none of them was there as there is here and was in *Ruloff* the possibility that no loss at all had occurred. Here, the only proof outside the defendant's confession of the victim's death is the inconclusive evidence of the fact based on her unexplained disappearance. The only evidence the People offer as supporting the fact that the crime of murder was committed is the evidence that defendant and the victim were together at approximately the time that she disappeared and defendant's assertedly incriminating conduct in making false statements concerning the victim's possessions and in leaving the area soon thereafter. Outside the confession, there is not one shred of evidence, direct or

circumstantial, of violence or that any crime was committed. Nor can defendant's suspicious actions — which might, if accompanied by other strong evidence, serve as some additional evidence of guilt, although weak (see Richardson, Evidence [10th ed], § 167) — fill the gap. Here there is no such strong additional evidence that any crime was committed.

We think that the rule as stated in *People v Deacons* (109 NY 374, 378) remains sound: "In a case where the body is not found, and there is no proof of violence or of death except by the confession of the accused, that confession will not suffice. There must be some other evidence of the existence of the criminal fact to which the confession relates." Such rule obviates the danger present in any homicide case where there is not conclusive proof of the fact of death, i.e., the "danger that a crime may be confessed when no such crime in any degree has been committed by any one" *(People v Lytton,* 257 NY 310, 314). Clearly, here the "existence of the criminal fact" required by *Deacons* has not been established by direct evidence either of the death or of the criminal agency as required by *Ruloff.* Neither has it been established by the "strong and unequivocal" circumstantial evidence found sufficient in *United States v Williams (supra).*

Nor do we find in the Legislature's failure to re-enact section 1041 at the time of the revision of the Penal Law in 1967 any intention to weaken the requirement in CPL 60.50 that no person shall be convicted of any crime based on his confession absent independent proof that the crime was committed. Section 1041 imposed a stringent rule applicable only to murder and manslaughter cases that there must be direct proof of the death in every such case. That the Legislature in revising the Penal Law saw fit to discard this provision so that a conviction in a homicide case might be possible where the body of the victim has not been found certainly does not effect any change in the quantum of proof outside the confession required for conviction of any type of crime under the totally discrete provision of CPL 60.50. Nor does it change the long-established construction of CPL 60.50 as requiring additional proof of both elements of the corpus delicti. Indeed,

the court in *People v Murray* (40 NY2d 327, 332, cert den 430 US 948, *supra* [decided subsequent to the revision of the Penal Law]), citing the interpretation of the *Ruloff* rule in *People v Bennett* (49 NY 137, 143, *supra*), states that CPL 60.50 codifies the common-law rule.

The People argue that the current policy considerations are different from those prevailing in Lord HALE's day and at the time of the *Ruloff* case when murder was usually punishable by death and the defendant did not have to-day's procedural and constitutional protections against involuntary or uncounseled confessions (see, e.g., *People v Smith,* 54 NY2d 954; *People v Bartolomeo,* 53 NY2d 225). Be that as it may, there appears to us to be lasting practical wisdom in Lord HALE's rule that a man should not be convicted of murder or manslaughter "'unless the fact was proved to be done, or, at least, the body found dead'" *(People v Bennett, supra,* p 143). The underlying policy — that a man should not be convicted for a crime which was never committed — is as compelling today as in the past. That consideration supports what we think is the correct judicial interpretation of CPL 60.50 as requiring that there be direct proof of one or the other of the elements of the corpus delicti or, in the absence of such proof, that the circumstantial evidence of the corpus delicti be "strong and unequivocal" *(United States v Williams, supra,* p 642), such as that present in *King v Hindmarsh* (2 Leach 569, 168 Eng Rep 387, *supra)* where bloodstains evidenced the violent act and a witness viewed the disposal of the body. The circumstantial evidence here which establishes at most the disappearance of Mary Robinson and a connection between her and the defendant at the approximate time of the disappearance does not satisfy this standard. To find otherwise on this record would require a rejection of the strong policy considerations underlying CPL 60.50 and would constitute a change in New York from the require-ment, codified in the statute, of proof of the corpus delicti independent of the confession, to the rule existing in cer-tain other States that corroboration of the truth of the confession itself is sufficient (see 7 Wigmore, Evidence [Chadbourn rev], § 2071; 46 Fordham L Rev 1205, 1217-

1220). Such a change, if it is to be made, is for legislative action.

The order should be affirmed.

DILLON, P. J. (concurring). I concur in the result. Under former section 1041 of the Penal Law and its predecessor, section 181 of the former Penal Code, a conviction could not be had for murder or manslaughter unless the death of the victim was established by direct proof. That the death was caused by defendant's criminal agency could not be established solely by the confession of the defendant, but it was not essential that the independent evidence, standing alone, be sufficient to establish such causal connection. It was enough under section 395 of the former Code of Criminal Procedure if the additional circumstantial evidence reasonably tended to prove the crime and corroborate the confession *(People v Brasch,* 193 NY 46).

When the Legislature pointedly declined to re-enact the provisions of former section 1041 of the Penal Law, it put an end to the rule that the death of the victim must be established by direct proof. Thus even though there is no witness to the homicidal act and the dead body has not been found, if the confession and the additional circumstantial proof together establish the commission of the crime beyond a reasonable doubt, a conviction will be sustained. Such is the standard which flows from CPL 60.50.

On those points, then, I agree with Justice MOULE's dissent. Nonetheless, I vote to affirm because here defendant's confession and the extrinsic circumstantial evidence, considered together are insufficient as a matter of law to demonstrate beyond a reasonable doubt either that the alleged victim is dead or that her death was caused by defendant's criminal agency.

MOULE, J. (dissenting). I must dissent. CPL 60.50 codified the common-law rule that required additional proof of a crime, other than a confession, to obviate the danger that a crime may be confessed when no such crime has been committed *(People v Murray,* 40 NY2d 327, cert den 430 US 948). The statute is satisfied by the production of some proof, of whatever weight, that a crime was committed by

someone. This additional proof may be either direct or circumstantial evidence *(People v Murray, supra; People v Daniels,* 37 NY2d 624; *People v Cuozzo,* 292 NY 85).

The rule at common law requiring, for a conviction of murder or manslaughter, either direct proof of the death of the person alleged to have been killed or the criminal agency of another as the means *(People v Bennett,* 49 NY 137; *Ruloff v People,* 18 NY 179) has long been abandoned. The provisions of former section 1041 of the Penal Law had statutorily incorporated the rule: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant, as alleged, are each established as independent facts; the former by direct proof, and the latter beyond a reasonable doubt." When the statute was revised in 1967, however, the requirements of section 1041 were not recodified, and the terms relating to direct proof were omitted; therefore, any form of proof, whether direct or circumstantial, will satisfy the criteria of CPL 60.50 *(People v Jennings,* 40 AD2d 357, affd 33 NY2d 880).

Apart from defendant's admission, the additional evidence at trial established that Mary Robinson's disappearance was unexplained. A long-time resident of Rochester, with local family and friends, she kept in frequent contact with them and in daily contact with her husband. There is no indication of any desire on her part to leave the area. Her personal belongings, including a treasured photograph she would likely have taken with her, were not missing and her Social Security account reflected no activity. The personal items located in defendant's apartment, her glasses, purse and shoes, which she was wearing when last seen, were not the type she would leave behind if she had left willingly; she wore her glasses constantly, as she had difficulty seeing without them, and her purse contained her wallet and necessary identification. Defendant's explanation that these items were left by a former tenant in his apartment was proven, by the landlord, to be false. The linking of defendant to Mary Robinson is established by

the fact that he was employed by the motel out of which she worked.

Also of importance is the fact that defendant abruptly decided to leave Rochester shortly after the disappearance of Mary Robinson, something he had never mentioned before, at which time he was described as "emotionally overwrought". At the time he discussed leaving, he was engaged to a girl and had preregistered at a local college for the upcoming semester. When defendant told his fiancée that he was leaving, he stated he would be working with his parents in Arizona.

The circumstances surrounding defendant's confession are telling in establishing criminal agency and indicate that Mary Robinson did not merely disappear. His voluntary revelation that he murdered Mary Robinson by strangling her came approximately two and one half years after she had been reported missing and was made in a setting unrelated and neutral to the confessed crime. Furthermore, there is no danger that this may be a questionable admission consisting of matters of common knowledge or details defendant might have observed upon visiting the scene after the death (People v Cuozzo, supra, at p 94); defendant possessed unique knowledge of the cause of death, disposition of the body, date and place of the murder, name of the victim as well as her occupation, and the confession was the event which initiated this investigation.

When viewed together, these circumstances, even if susceptible of an innocent construction, nevertheless are calculated to suggest the commission of the murder of Mary Robinson, and defendant's confession furnishes the key to their explanation (People v Jaehne, 103 NY 182; People v Kelly, 67 AD2d 1009). In fact, one of defendant's admissions was, "Well, go ahead and try to pin it on me, you can't because there isn't a body so there wouldn't be any evidence." The circumstantial evidence, when considered in connection with the confession, was sufficient to establish defendant's guilt in the minds of the jurors beyond a reasonable doubt, and the case should not have been taken from them (People v Anderson, 80 AD2d 33).

DOERR, J., concurs with HANCOCK, JR., J.; DILLON, P. J.,

concurs in a separate opinion; CALLAHAN and MOULE, JJ., dissent in an opinion by MOULE, J.

Order affirmed.